Noelia BENDIGO and Colin
Bendigo, Appellants,

v.

CITY OF HOUSTON, Burns Management Group, Inc., Central Parking System of Texas, Inc., New South Parking Texas, and Aztec Facility Services, Inc., Appellees.

No. 01–04–00443–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 23, 2005.

Francis I. Spagnoletti, James T. Liston, Spagnoletti & Associates, Houston, TX, for Appellants.

John B. Wallace, Giessel, Barker & Lyman, P.C., Kevin B. Finkel, Hill Kinkel & King, LLP, Houston, TX, for Appellees.

Panel consists of Justices NUCHIA, KEYES, and BLAND.

## OPINION

JANE BLAND, Justice.

Appellants, Noelia and Colin Bendigo, challenge the traditional and no-evidence summary judgments rendered against them in their trip-and-fall premises liability lawsuit against appellees, City of Houston, Burns Management Group, Inc., Central Parking System of Texas, Inc., New South Parking Texas, and Aztec Facility Services, Inc. (collectively "Burns Management"). We conclude that the trial court did not err in granting Burns Management's summary judgment and therefore affirm.

## Facts

In July 2001, Noelia Bendigo and her friend Yolanda Feindt arrived at Bush Intercontinental Airport with the intent that Bendigo would board a flight bound for Miami, Florida. Bendigo walked through the Terminal C parking garage on her way to the flight gate. As she walked down the parking garage stairwell—holding her garment bag in one hand and the stairwell railing in the other—Bendigo slipped on a disposable cup, fell down the remaining stairs, and injured her ankle.

Bendigo sued Burns Management, contending that it owned, operated, and maintained the parking garage in which she fell and that it was negligent in maintaining the stairwell.[1] Burns Management moved for a traditional and no-evidence summary judgment.[2] In March 2004, the trial court granted summary judgment.

## Standard of Review

The propriety of summary judgment is a question of law, and thus we review the trial court's decision de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003). Burns Management filed both traditional and no-evidence summary judgment motions. *See* TEX.R. CIV. P. 166a(c),(i). On review, we make inferences, resolve doubts, and view the evidence in the light most favorable to the non-movant. *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222 (Tex.1999).

The movant for a traditional summary judgment has the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 510 (Tex.1995); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). A defendant moving for summary judgment must either disprove at least one element of each of the plaintiff's causes of action, or plead and conclusively establish each essential element of its affirmative defense, thereby rebutting the plaintiff's causes of action. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995).

In a no-evidence summary judgment under Rule 166a(i), the movant represents that no evidence exists as to one or more essential elements of the non-movant's claims, upon which the non-movant would have the burden of proof at trial. TEX.R. CIV. P. 166a(i). The non-movant then must present evidence raising a genuine issue of material fact on the challenged elements. *Id.* A no-evidence summary judgment is essentially a pre-trial directed verdict, and

---

1. Her husband, Colin Bendigo, alleged purely derivative claims of loss of consortium and household services.

2. Two motions were filed (one by Aztec Facility Services, Inc. on February 13, 2004, and a second by City of Houston, Burns Management Group, Inc., Central Parking System of Texas, Inc., and New South Parking Texas on February 17, 2004). Because they raise the same issues, we refer to them together.

a no-evidence motion asserts that no evidence exists as to at least one essential element of the non-movant's claims on which the non-movant would have the burden of proof at trial. *Jackson v. Fiesta Mart*, 979 S.W.2d 68, 70–71 (Tex.App.-Austin 1998, no pet.). On review, we ascertain whether the non-movant produced more than a scintilla of probative evidence to raise a genuine issue of material fact. *Id.* More than a scintilla of evidence exists if the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex.2003) (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997)). If the evidence does no more than create a mere surmise or suspicion of fact, less than a scintilla of evidence exists. *Merrell Dow Pharms. Inc.*, 953 S.W.2d at 711.

Here, because the summary judgment order does not specify the ground or grounds on which the trial court relied for its ruling, we will affirm the summary judgment if any theory the non-movant advances has merit. *See Weiner v. Wasson*, 900 S.W.2d 316, 317 n. 2 (Tex.1995); *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625–26 (Tex.1996).

### Premises Liability

Burns Management owed Bendigo, its invitee, a duty to exercise reasonable care to protect Bendigo from dangerous conditions in the garage that were known or reasonably discoverable. *Wal–Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex.1998). It was not, however, an insurer of Bendigo's safety. *Id.*

In order to recover from Burns Management, Bendigo must prove the following:

(1) [That the owner/operator had] actual or constructive knowledge of some condition on the premises;

(2) That the condition posed an unreasonable risk of harm;

(3) That the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and

(4) That the owner/operator's failure to use such care proximately caused the plaintiff's injuries.

*Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex.1992) (citing *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex. 1983)). A trip-and-fall plaintiff satisfies the notice element by establishing one of three things: (1) that the defendant placed a substance on the floor; (2) that the defendant actually knew that a substance was on the floor; or (3) that it is more likely than not that the dangerous condition existed long enough to give the premises owner a reasonable opportunity to discover it. *Wal–Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex.2002) (citing *Gonzalez*, 968 S.W.2d at 936 and *Keetch*, 845 S.W.2d at 265).

### A. Constructive Knowledge of Cup

In its motion for no-evidence summary judgment, Burns Management contends that Bendigo failed to produce evidence of its actual or constructive knowledge of the alleged dangerous condition. Bendigo does not contend that an employee of Burns Management placed the cup on the floor. Moreover, Bendigo concedes that she raises no fact issue regarding whether Burns Management had actual knowledge that the cup was present in the stairwell at the time that she fell. Bendigo thus relies on constructive knowledge. To prevail, she must produce more than a scintilla of provative evidence that the cup had been on the floor for a sufficient period of time to allow Burns Management a reasonable

opportunity to discover it. *See Wright v. Wal–Mart Stores, Inc.*, 73 S.W.3d 552, 554–56 (Tex.App.-Houston [1st Dist.] 2002, no pet.).

 Although Bendigo concedes that she does not know the exact time that the cup was dropped in the stairwell, she contends that she satisfies her burden by providing circumstantial evidence that Burns Management failed to check the stairwell for litter after the late afternoon rush at Terminal C. A plaintiff may rely on circumstantial evidence to prove constructive notice of a dangerous condition if the circumstantial evidence establishes that a proposition is more likely than not probable, but such evidence is insufficient if it raises two equally possible propositions. *Id.* (citing *Gonzalez*, 968 S.W.2d at 936). If circumstances are consistent with any possibility, and nothing shows that one is more probable than the other, then no fact can be inferred by a reasonable factfinder. *Id.* (citing *Lozano v. Lozano*, 52 S.W.3d 141, 148 (Tex.2001)). Likewise, a reasonable jury may not infer an ultimate fact from meager circumstantial evidence that could give rise to any number of inferences, none more probable than another. *Id.*

██ Bendigo directs us to the following circumstantial evidence. First, Burns Management knew that thousands of people use the Terminal C garage on a daily basis. Second, Burns Management knew that an "exodus of customers" occurred from the parking garage between approximately 5:30 p.m. and 6:30 p.m. each day. Third, after its daily 10:00 a.m. cleaning, Burns Management did not again inspect the stairwell until approximately midnight or 1:00 a.m. Fourth, Bendigo fell in the stairwell around 8:30 p.m. Finally, when Bendigo fell, at least two other pieces of garbage—including empty food wrappers and a Coca–Cola can—littered the stair-

well. Bendigo contends that this evidence raises a fact issue "that the cup could well have been on the stairs for 10–12 hours—a sufficient amount of time to allow a party to be deemed to have constructive knowledge."

Bendigo provides no evidence that the collection of trash that she found existed in the stairwell after her fall was a usual occurrence. No evidence suggests that, even if an accumulation of trash is usual, it is likely to accumulate at a certain time of the day. No evidence exists of prior reports of slips or falls or injuries of any kind in the Terminal C stairwell. No evidence suggests that the condition of the cup indicated that it had been in the stairwell for a long time. Mere evidence that Burns Management had not cleaned the stairs for approximately ten hours before Bendigo's fall is not evidence of the time that a passerby actually discarded the cup in the stairwell. Bendigo's speculation—that the cup "could have been there" for ten to twelve hours—is not more probable than a number of other scenarios, including that the cup was dropped minutes before Bendigo fell. Bendigo's facts "create a mere surmise or suspicion of fact," and therefore amount to less than a scintilla of evidence of Burns Management's constructive knowledge of a dangerous condition. *See Reece*, 81 S.W.3d at 816–17 (holding that evidence that store had time to discover liquid spill on floor was insufficient evidence to support finding that store had constructive notice of spill); *Gonzalez*, 968 S.W.2d at 937–38 (holding that dirt in macaroni salad on floor is no evidence of length of time macaroni had been on floor and thus is no basis for constructive notice); *Joachimi v. City of Houston*, 712 S.W.2d 861, 864–65 (Tex.App.-Houston [1st Dist.] 1986, no pet.) (holding plaintiff's contention that more inspections could have discovered oil spot on parking garage floor

was not enough to find that garage owner had constructive notice of it); *see also Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 728 (Tex.2003) ("an inference stacked only on other inferences is not legally sufficient evidence.").

### B. Liability Without Constructive Knowledge

Bendigo cites *Corbin*, 648 S.W.2d at 295–96, for her contention that she did not have to provide evidence of Burns Management's actual or constructive notice of the cup in the stairwell.[3] In *Corbin*, a grocery store customer slipped on a grape in front of a self-service grape bin. The customer sued the store, claiming that three dangerous conditions existed: (1) the grape on which he slipped; (2) excessively dirty floors; and (3) the self-service display of green grapes, in an open, slanted bin above a green linoleum floor. *Id.* at 296. The court held that because the store did not have actual or constructive notice of the grape on the floor, it could not be liable under the customer's first theory. *Id.* Second, even though evidence existed that the store had a history of letting its floors become filthy, it could not support a finding that the dirty floor proximately caused the customer's fall "since he testified that he slipped on a grape, not on dirt or other slippery matter." *Id.* The customer could recover against the store under his third theory because there was evidence that the store knew of an unusually high risk associated with its grape display. *Id.* In its holding, the *Corbin* court noted the difference from other "slip and fall" cases: "there is usually no basis for a claim that the store owner maintained an unreasonably dangerous method of display that frequently *caused* such food

items to become floor hazards." *Id.* at 297 (emphasis in original).

Bendigo's reliance on *Corbin* is misplaced. First, Bendigo's failure to provide evidence of Burns Management's actual or constructive knowledge of the cup is similar to the customer in *Corbin* failing to provide evidence of the store's knowledge of the grape—in both instances, the lack of knowledge is fatal. Moreover, unlike the customer in *Corbin*, Bendigo did not provide evidence that Burns Management caused the cup to be on the floor or that the stairwell itself was a dangerous condition. *See CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 101 (Tex.2000) (distinguishing facts from those in *Corbin* because the self-service grape display in *Corbin* "constituted a dangerous condition from the moment it was used.").

### Common Law Duty of Ordinary Care

In a separate argument, Bendigo contends that Burns Management had an additional "common-law legal duty to exercise ordinary care to protect business invitees from danger." Bendigo contends that under this common-law duty, Burns Management is liable because it failed to conduct inspections of a *known danger*, and thus, the trial court erred in granting summary judgment because her evidence "raises a genuine issue of material fact about whether [Burns Management's] questionable practice of cleaning stairways only once per day satisfies [its] common-law legal duty to exercise ordinary care to protect business invitees from danger."

First, Bendigo's argument is circular. Before an alleged dangerous condition can be "known," Burns Management must have either actual or constructive knowl-

---

**3.** Bendigo also cites two out-of-state cases, without an analysis of the other states' accompanying premises liability law. In light of the well-established premises liability law through holdings of the Texas Supreme Court, we decline to follow these cases.

edge of the condition. Second, the cases Bendigo cites concerning a duty to inspect do not support her contention. These cases discuss the duty to inspect premises once a defendant has knowledge of a dangerous condition. Third, Bendigo provides no support for her argument that, in a trip-and-fall case based on the condition of the premises, there is a common-law legal duty separate from that provided in premises liability law. In *Keetch*, the Texas Supreme Court confirmed that *"general negligence principles* in a premises liability case are stated in Section 343 of the Restatement Second of Torts (1956)." 845 S.W.2d at 266 (emphasis added) (citing *Corbin*, 648 S.W.2d at 295). Premises liability analysis simply tailors the traditional test of the conduct of a reasonably prudent person under a general negligence action to the specific category of premises owners. A separate "general negligence duty" thus does not exist.

## Conclusion

We hold that Bendigo failed to provide more than a scintilla of evidence that Burns Management had knowledge of a dangerous condition. We conclude that the trial court properly granted a no-evidence summary judgment on Bendigo's premises liability claims and therefore affirm its judgment.