Opinion issued November 5, 2009












     





In The
Court of Appeals
For The
First District of Texas




NO. 01-08-01022-CV




DAVID SENKO, Appellant

V.

BP PRODUCTS NORTH AMERICA, INC. AND DON PARUS, Appellees




On Appeal from the 212th District Court
Galveston County, Texas
Trial Court Cause No. 05CV0337B




M E M O R A N D U M O P I N I O N

            The trial court granted summary judgment for BP Products North America, Inc.
and Don Parus (collectively “BP”).


 In two issues, appellant, David Senko, argues
that the trial court erred by (1) excluding BP’s felony conviction and the statement
of facts in denying his motion for a new trial and (2) granting BP’s summary
judgment on his claims for negligence, negligence per se, and intentional infliction
of emotional distress.
          We affirm.
Background
          On March 23, 2005, a catastrophic explosion occurred at BP’s Texas City
Refinery. At the time of the explosion, Senko, an employee of the contractor J.E.
Merit, had been working at BP for less than four months. During those four months
he oversaw Merit’s operations at BP’s Texas City Refinery and four other BP
locations. Before the explosion, three of the workers supervised by Senko told him
that they were considering quitting or leaving for other jobs. Senko convinced those
three workers to remain in their current jobs. They died in the explosion. On the day
of the explosion, Senko was at a BP facility in California. After the explosion,
Senko’s supervisor called him and asked him to return to Texas to help identify those
missing or killed in the accident. Senko arrived at the site of the explosion the day
after it had occurred. He continued to work for J.E. Merit for a year after the
explosion. He claims to have suffered mental anguish and physical injuries including
anxiety, shingles, hypertension, and hypercholesterolemia. 
 
Procedural History
            Senko’s petition alleged that BP was liable for negligence, negligence per se,
premises liability, assault, and intentional infliction of emotional distress. The
petition claimed damages for physical injuries and mental anguish. BP answered on
February 12, 2007. 
          BP filed a traditional motion for summary judgment against Senko’s claims on
July 11, 2007. BP argued that Senko could not recover mental anguish damages
under theories of negligence, negligence per se, or intentional infliction of emotional
distress, that it did not commit assault, and that Senko pled no other grounds on
which he could recover. BP also argued that Senko did not suffer any distinct
physical injuries. Senko responded by arguing that he had physical injuries, that BP
had to plead special exceptions before moving for summary judgment, and that he
could recover under the claims of the original petition. Senko claimed that his
physical injuries included his anxiety, shingles, hypertension, and
hypercholesterolemia. The trial court granted summary judgment for BP on August
14, 2007 without specifying grounds. 
          On September 4, 2008, Senko moved for a new trial, arguing that the evidence
in front of the trial court showed that it had granted summary judgment improperly. 
Senko attached five exhibits dated after the trial court granted the motion for
summary judgement to this motion. Principally, the exhibits concerned the criminal
charges filed against BP in connection with the explosion. On October 8, 2008, BP
moved to strike these exhibits, contending that Senko had pled his motion for a new
trial improperly. The trial court granted BP’s motion to strike and denied Senko’s
motion for new trial. Senko appealed. 
Standard of Review
          BP moved for traditional summary judgment under Texas Rule of Civil
Procedure 166a(c). Tex. R. Civ. P. 166a(c). Because summary judgment is a
question of law, we review a trial court’s summary judgment decision de novo.
Provident Life & Accident Ins. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003); Bendigo
v. City of Houston, 178 S.W.3d 112, 113 (Tex. App.—Houston [1st Dist.] 2005, no
pet.). The standard of review for a traditional summary judgment motion is threefold:
(1) the movant must show that there is no genuine issue of material fact and that he
is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed
material fact issue precluding summary judgment, the reviewing court must take
evidence favorable to the nonmovant as true; and (3) the reviewing court must
indulge every reasonable inference in favor of the nonmovant and resolve any doubts
in the nonmovant’s favor. Fort Worth Osteopathic Hosp. v. Reese, 148 S.W.3d 94,
99 (Tex. 2004) (citing Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548–49 (Tex.
1985)); see Tex. R. Civ. P. 166a(c). If the summary judgment does not specify the
basis for the trial court’s ruling, as here, the summary judgment will be affirmed if
any of the theories advanced by the movant is meritorious. Joe v. Two Thirty Nine
Joint Venture, 145 S.W.3d 150, 157 (Tex. 2004) (citing Cincinnati Life Ins. Co. v.
Cates, 927 S.W.2d 623, 626 (Tex. 1996), and Carr v. Brasher, 776 S.W.2d 567, 569
(Tex. 1989)).
Motion for a New Trial
          In his first issue, Senko argues that the trial court erred in granting BP’s motion
to strike newly presented evidence and in not granting him a new trial. Senko
contends that the trial court improperly excluded five exhibits that he attached to his
motion for new trial. The five exhibits were: (1) a transcript of a hearing on the status
of other civil cases that arose from the explosion and on the discovery and
admissibility of documents; (2) a business records affidavit; (3) a criminal
information against BP; (4) a statement of facts that BP stipulated the Department of
Justice could prove in a criminal trial; and (5) the plea agreement between BP and the
Department of Justice. Senko contends that, had these documents been considered,
the trial court would have granted a new trial.
          We review a trial court’s denial of a motion for new trial for an abuse of
discretion. Cliff v. Huggins, 724 S.W.2d 778, 778 (Tex. 1987). An abuse of
discretion occurs when the trial court’s decision is arbitrary, unreasonable, and
without reference to guiding principles. Mercedes-Benz Credit Corp. v. Rhyne, 925
S.W.2d 664, 666 (Tex. 1996).
          When considering whether to grant motion for a new trial based on the
presentation of new evidence, the party seeking to introduce the new evidence must
show that the evidence was newly discovered and could not have been discovered
through due diligence prior to the court’s ruling on the motion for summary judgment.
 McMahan v. Greenwood, 108 S.W.3d 467, 500 (Tex. App.—Houston [14th Dist.]
2003, pet. denied); Indus. Clearinghouse, Inc. v. Jackson Walker, L.L.P., 162 S.W.3d
384, 389 (Tex. App.—Dallas 2005, pet. denied). Specifically, in determining whether
new evidence should be considered in a motion for new trial, a court must satisfy four
criteria: (1) the evidence came to light after the trial; (2) the failure to produce the
evidence earlier was not due to a lack of effort or attention by the party now seeking
to introduce that evidence; (3) the new evidence is not cumulative; and (4) the new
evidence is so material that the trial court would have come to a different conclusion
had the evidence been admitted. Greenwood, 108 S.W.3d at 500; Barbarawi v.
Ahmad, No. 14-07099790-CV, 2008 WL 2261433 at *4 (Tex. App.—Houston [14th
Dist.] May 27, 2008, no pet.) (mem. op.).
          BP moved to strike these exhibits under the Texas Rule of Civil Procedure
324(b)(1). See Tex. R. Civ. P. 324(b)(1) (requiring point in motion for a new trial on
newly discovered evidence as prerequisite for appeal). BP argued that Senko’s
motion for new trial addressed issues already considered by the trial court and
therefore did not comply with Rule 324(b)(1)’s requirement that his motion for new
trial indicate that it is based on the discovery of new evidence. Senko made no effort
to meet the standard for the introduction of new evidence. The trial court granted
BP’s motion to strike and denied Senko’s motion for new trial. We hold the trial
court did not abuse its discretion in granting BP’s motion to strike or in denying
Senko’s motion for new trial.
          We overrule Senko’s first issue.
Motion for Summary Judgment
          In his second issue, Senko argues that the trial court erred in granting BP’s
motion for summary judgment on his negligence, negligence per se, and intentional
infliction of emotional distress claims because genuine issues of material fact existed
on all claims. 
          A.      Negligence
          Senko alleges that BP’s negligence caused the March 23 explosion and his
resulting physical injuries and mental anguish. Specifically, he argues that as a result
of the explosion, he suffers anxiety, shingles, hypertension, and hypercholesterolemia
that developed from the psychological stress and trauma the explosion imposed on
him and that his injuries and mental anguish were a foreseeable consequence of BP’s
negligence in maintaining its refinery. BP moved for summary judgment on Senko’s
claim, arguing that Senko could not recover for mental anguish based on BP’s
negligence, because negligent infliction of mental anguish is not available as a cause
of action, and he could not recover for his physical injuries because they derived 
from his emotional trauma. 
          To establish negligence, a party must establish a duty, a breach of that duty,
and damages proximately caused by the breach. Kroger Co. v. Elwood, 197 S.W.3d
793, 794 (Tex. 2006); Greater Houston Transp. Co. v. Phillips, 801 S.W.2d 523, 525
(Tex. 1990). Whether a duty exists is a threshold inquiry and a question of law;
liability cannot be imposed if no duty exists. Kroger, 197 S.W.3d at 794; Van Horn
v. Chambers, 970 S.W.2d 542, 544 (Tex. 1998). “In determining whether the
defendant was under a duty, the court will consider several interrelated factors,
including the risk, foreseeability, and the likelihood of injury weighed against the
social utility of the actor’s conduct, the magnitude of the burden of guarding against
the injury, and the consequences of placing the burden on the defendant.” Greater
Houston Transp., 801 S.W.2d at 525.
          In Texas, there is no “general duty not to negligently inflict emotional distress.” 
Temple-Inland Forest Prods. Corp. v. Carter, 993 S.W.2d 88, 91 (Tex. 1999); City
of Tyler v. Likes, 962 S.W.2d 489, 494 (Tex. 1997); Boyles v. Kerr, 855 S.W.2d 593,
597 (Tex. 1993). However, although no general duty requires actors to avoid
negligently inflicting emotional distress, claimants may recover mental anguish
damages caused by a defendant’s breach of some other legal duty, including some
common law torts. Likes, 962 S.W.2d at 495; Boyles, 855 S.W.2d at 597. 
          Citing Likes, Senko asserts that negligence is among the common law torts for
which damages for mental anguish may be recovered. Likes, 962 S.W.2d at 495. We
conclude that Likes does not support the proposition that a negligence claim, such as
the one asserted by Senko, is among the common law torts for which a plaintiff may
recover damages for mental anguish. See Temple-Inland Forest Prods., 993 S.W.2d
at 91 (stating circumstances in which such recovery may be made).
          In Likes, the supreme court wrote that recovery for mental anguish is limited
to those torts that “generally involve intentional or malicious conduct” and it stated
that libel and battery were examples of such torts. Likes, 962 S.W.2d at 495. The
supreme court stated that a defendant may be liable for mental anguish damages when
his actions create a “mental shock” if that mental shock was foreseeable “and mental
anguish is one element of damages.” Id. at 495–96. Such a claim, however, must be
a component of a personal injury claim. Id. The Likes decision stated that, “[w]ithout
intent or malice on the defendant’s part, serious bodily injury to the plaintiff, or a
special relationship between the two parties, we permit recovery for mental anguish
in only a few types of cases . . . include suits for wrongful death and actions by
bystanders for a close family member’s serious injury.” Id. at 496 (holding that
injuries like difficulty sleeping “are not serious bodily injuries that can form the basis
for recovering mental anguish damages”). 
          A number of other Texas courts have determined that damages are not
recoverable for injuries similar to those claimed by Senko. In a case arising from the
same explosion and with similar facts, the Fourteenth Court of Appeals determined
that the relatives of a victim who died in the explosion, but who themselves were
neither present nor injured, could not recover for their mental anguish. The family
members claimed to suffer from “anxiety and depression and the consequent physical
manifestations arising from that emotional distress.” The court held that these
injuries were not sufficiently direct to allow the family members to collect damages
for their mental anguish. Godfrey v. BP Prods. N. Am., Inc., No. 14-08-00857-CV,
2009 WL 2589476 at *2–3 (Tex. App.—Houston [14th Dist.] Aug. 25, 2009, no pet.)
(mem. op.). Similarly, the same court of appeals determined that when a car was
repossessed with the small children of the car’s owners inside the owners could not
recover for their mental anguish. The court held that chest pain, numbness in an
owner’s arm, and the development of an anxiety disorder and post-traumatic stress
disorder did not constitute distinct physical injuries that would allow for the recovery
of mental anguish damages. Chapa v. Traciers & Assocs., 267 S.W.3d 386, 397–98
(Tex. App.—Houston [14th Dist.] 2008, no pet.); see also Fitzpatrick v. Copeland,
80 S.W.3d 297, 300–01 (Tex. App.—Fort Worth 2002, pet. denied) (holding that
woman who was in accident that killed her friend and contended that she suffered
from post-traumatic stress disorder, anxiety, and loss of sleep, but who personally
suffered no direct physical injury could not recover for mental anguish).
          Senko does not assert a claim for serious bodily injury, and he does not qualify
for any of the limited exceptions discussed in Likes. We conclude that Senko failed
to prove that he was entitled to recover for mental anguish under “some other legal
duty.” Boyles 855 S.W.2d at 597; see Likes, 962 S.W.2d at 496. 
          We hold that the trial court did not err in granting BP’s motion for summary
judgment on Senko’s negligent infliction of emotional distress claim and his claim
for damages for mental anguish. 
          B.      Negligence Per Se
          Senko also argues that BP committed negligence per se by violating the federal
Clean Air Act and, therefore, the trial court erred in granting BP’s motion for
summary judgment on his negligence per se claims.
          Senko has not provided any authority suggesting that the Clean Air Act would
support his claim for negligence per se, and his brief is deficient according to the
terms of Texas Rule of Appellate Procedure 38.1(i). Tex. R. App. P. 38.1(i). 
However, even if the brief were not deficient, we conclude that the Clean Air Act
does not support Senko’s negligence per se claim. See Reeder, 61 S.W.3d at 362.
          “Negligence per se is a common-law doctrine that allows courts to rely on a 
penal statute to define a reasonably prudent person’s standard of care.” Reeder v.
Daniel, 61 S.W.3d 359, 361–62 (Tex. 2001) (citing Carter v. William Sommerville
& Son, Inc., 584 S.W.2d 274, 278 (Tex. 1979)). However, the existence of a criminal
statute does not necessarily permit a civil cause of action for that offense. Id. at 362. 
Instead, in determining “whether a penal statute provides the basis for a civil cause
of action, we must consider whether recognizing such an accompanying civil action
would be inconsistent with legislative intent.” Id. (citing Smith v. Merritt, 940
S.W.2d 602, 607 (Tex. 1997)).
          A private citizen’s right to sue under the Clean Air Act is extremely limited and
contains no provision for damages to an individual. See 42 U.S.C.A. § 7604 (West
2009) (authorizing citizens to sue to enforce standards of Clean Air Act and providing
that any penalties received “shall be deposited into a special fund in the United States
Treasury”); see also 116 Cong Rec. 33104 (1970) (“[I]t should be noted that the bill
makes no provision for damages to the individual. It therefore provides no incentives
to sue other than to protect the health and welfare of those suing and others similarly
situated.”).
           Because of the limited nature of the private right to suit under the Clean Air
Act and the express language in the statue and the legislative history that the bill was
not meant to provide damages to individuals, we hold that the trial court did not err
in granting summary judgment on this claim.
          C.      Intentional Infliction of Emotional Distress
          Finally, Senko claims that BP’s conduct constituted an intentional infliction of
emotional distress. Senko contends that BP’s conduct that resulted in the explosion
caused him to suffer severe emotional trauma. BP contends that Senko may not
recover for mental anguish on this ground because Senko cannot not prove that the
intended or primary purpose of BP’s conduct relating to the plant explosion was to
cause emotional distress. 
          A claim for intentional infliction of emotional distress contains four elements:
(1) the tortfeasor acted intentionally or recklessly; (2) the conduct was extreme and
outrageous; (3) the tortfeasor’s actions caused the plaintiff’s emotional distress; and
(4) the emotional distress suffered by the plaintiff was severe. Bradford v. Vento, 48
S.W.3d 749, 758 (Tex. 2001); Standard Fruit & Vegetable Co. v. Johnson, 985
S.W.2d 62, 65 (Tex. 1998). 
          Even when these four elements are satisfied, recovery is not available to a
claimant unless “the actor intend[ed] to cause severe emotional distress or severe
emotional distress [was] the primary risk created by the actor’s reckless conduct.” 
Johnson, 985 S.W.2d at 62. Specifically, a plaintiff may only recover when “the
tortfeasor desired or anticipated that the plaintiff would suffer severe emotional
distress.” Id. at 67. In Johnson, the supreme court held that witnesses to an accident
could not sue the reckless driver for intentional infliction of emotional distress
because “the primary risk of reckless driving is physical injury rather than emotional
distress” and thus precludes recovery under intentional infliction of emotional distress
for those without physical injuries. Id. at 68.
          Senko, nevertheless, argues that Johnson permits him to recover for intentional
infliction of emotional distress because it states that “if [the] conduct is intended or
primarily likely to produce severe emotional distress, section 46 [of the Restatement
(Second) of Torts] is an applicable theory of recovery even if the actor’s conduct also
produces some other harm, such a physical injury.” See id. at 67. Senko contends that
this applies to his circumstance because “it provides redress where the tortfeasor
‘anticipated that the plaintiff would suffer severe emotional distress.’” Additionally,
Senko argues that “in a catastrophe of this magnitude, physical injury and emotional
distress are intertwined . . . .” (Emphasis in original.)
          This interpretation of Johnson is misguided. Before the sentence quoted by
Senko, the Johnson court stated, “Where emotional distress is solely derivative of or
incidental to the intended or most likely consequence of the actor’s conduct, recovery
for such distress must be had, if at all, under some . . . tort doctrine [other than
intentional infliction of emotional distress].” Id. Thus, for a plaintiff to recover for
mental anguish damages under intentional infliction of emotional distress, the
defendant’s actions must have been intended to cause severe emotional distress or
that emotional distress must have been the primary risk of his actions. 
          The primary risk of negligence that results in an explosion, as here, is physical
injury rather than emotional distress. See id. at 67 (stating that primary risk of
reckless driving is physical injury, not emotional distress). Moreover, in this case,
Senko was not in Texas when the explosion occurred and was not physically injured,
and his emotional distress was admittedly derivative of his learning of the explosion. 
Therefore, we conclude that he cannot show that the primary risk of BP’s negligence
in maintaining the refinery was severe emotional distress.


 
          Senko also contends that intentional infliction of emotional distress is a “gap
filler” tort, and he argues that it is available when other torts do not allow a claimant
to assert a theory for recovery. Although intentional infliction of emotional distress
is a gap filler tort, it is not a “catch all” that allows an alternate method of recovery
when other torts are not available. Creditwatch, Inc. v. Jackson, 157 S.W.3d 814,
816, 818 (Tex. 2005); Johnson, 985 S.W.2d at 68. Specifically, claims for intentional
infliction of emotional distress “cannot be maintained when the risk that emotional
distress will result is merely incidental to the commission of some other tort.” 
Johnson, 985 S.W.2d at 69. Rather, intentional infliction of emotional distress’s gap
filler function is available as a supplement to “existing forms of recovery.” Id.
Because Senko failed to establish an existing form of recovery, intentional infliction
of emotional distress’s gap filling function is not implicated. Therefore, Senko’s
argument that intentional infliction of emotional distress should be available because
other torts do not allow for his recovery fails.
          We hold that the trial court did not err in granting BP’s motion for summary
judgment on this claim.
          We overrule Senko’s second issue.
Conclusion
          We affirm the judgment of the trial court.
 
 
 
                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Justices Keyes, Alcala, and Hanks.