**Opinion issued August 28, 2014**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-00046-CV

_____

**ANNIE EAST, Appellant**

**V.**

**SOUTHWEST CIMM'S INC. D/B/A BURGER KING #1002
A/K/A CIMM'S INCORPORATED, Appellee**

On Appeal from the County Civil Court at Law No. 2
Harris County, Texas
Trial Court Case No. 997701

## O P I N I O N

Appellant, Annie East, challenges the trial court's rendition of summary judgment in favor of appellee, Southwest Cimm's Inc., doing business as Burger King #1002, also known as Cimm's Incorporated ("Cimm"), on her claim against

Cimm for premises liability.  In her sole issue, East contends that the trial court erred in granting Cimm summary judgment.

We reverse and remand.

## Background

In her fourth amended petition, East alleges that on August 10, 2009, she suffered serious injury to her hip when she slipped and fell on a "slick" substance on the floor of Cimm's Burger King restaurant.  She sues Cimm for negligence, alleging that it "knew or, in the exercise of ordinary care, should have known" about the "dangerous condition" of the floor.  She alleges that Cimm's breach of its duties proximately caused her injuries and seeks damages for medical care, pain and suffering, and physical impairment.  She further seeks exemplary damages on the ground that Cimm's acts or omissions "involved an extreme degree of risk."

Cimm answered with a general denial and moved for summary judgment, asserting that there is no evidence to support any of the elements of East's claim, which sounds in premises liability and not in common-law negligence.  In its summary-judgment motion, Cimm asserted that there is no evidence that a condition posing "an unreasonable risk of harm" existed on its property, it had "any knowledge of a substance on the floor," it "failed to exercise reasonable care or . . . eliminate the risk associated with the condition," and proximately caused her injuries.  Cimm attached to its motion an excerpt from East's deposition, in

2

which she testified that she did not know what she slipped on, but she was only "seven or eight steps" away from the cash registers when she fell.

In her response to Cimm's summary-judgment motion, East argued that Cimm had not conclusively disproved any of the elements of her claim because material fact issues exist as to each element. East attached to her response the affidavit of her grandson, Tommy Matthews, who testified that he was with her at the restaurant at the time of her fall. Tommy further testified,

> This was a Burger King that was extremely dirty. The Burger King looked like it had not been cleaned for several days. . . . My grandmother went to the counter to purchase some food. The floor was dirty and when we entered the Burger King the floor was slippery. There was liquid substance on the floor that was extremely dirty. I was slipping on the floor myself. There were no signs post[ed] warning of the slippery and unclean floor. There [were] also no barriers blocking [the] area of the floor that was extremely slippery.

He explained that right after East had finished purchasing her food at the register, he "heard a loud thump" and saw her on the floor. Tommy stated that East had "slipped on a dirty liquid substance that was on the unclean floor," which "was the cause of [her] fall," and "caused [her] to break her hip."

East also attached to her response the affidavit of her daughter, Jackie Matthews, who testified that East was transported from the Burger King to a hospital by ambulance; she visited East in the hospital immediately after the fall and East's doctor told her that the fall had broken East's hip and required

immediate surgery; and East remained in the hospital for a week after the surgery, spent three weeks in rehabilitation, and has since been unable to walk unassisted. Jackie further testified that when she later went to the Burger King "on the day of the fall" to pick up East's car, she noted that the restaurant was "extremely dirty" inside. Jackie stated that East incurred injuries and medical expenses as a result of her fall from the unclean and unsafe floor at the Burger King.

After overruling Cimm's objections to East's summary-judgment evidence, the trial court granted Cimm summary judgment without stating the basis for its ruling.

## Standard of Review

We review the trial court's grant of summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). To prevail on a no-evidence summary-judgment motion, the movant must establish that there is no evidence to support an essential element of the non-movant's claim on which the non-movant would have the burden of proof at trial. TEX. R. CIV. P. 166a(i); *Hahn v. Love*, 321 S.W.3d 517, 523–24 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The burden then shifts to the non-movant to present evidence to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact on each of the challenged elements. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

4

More than a scintilla exists if the evidence offered "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubt in the non-movant's favor. *M.D. Anderson Hosp. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000); *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). The term "inference" means,

> [i]n the law of evidence, a truth or proposition drawn from another which is supposed or admitted to be true. A process of reasoning by which a fact or proposition sought to be established is deduced as a logical consequence from other facts, or a state of facts, already proved . . . .

*Marshall Field Stores, Inc. v. Gardiner*, 859 S.W.2d 391, 400 (Tex. App.— Houston [1st Dist.] 1993, writ dism'd w.o.j.) (quoting BLACK'S LAW DICTIONARY 700 (5th ed. 1979)). For a fact finder to infer a fact, "it must be able to deduce that fact as a logical consequence from other proven facts." *Id.* If the evidence only creates "a mere surmise or suspicion of fact," without more, then less than a scintilla exists. *Id.*; *see Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711–12 (Tex. 1997).

Here, because the trial court's summary judgment does not specify the ground or grounds on which the trial court relied for its ruling, we will uphold it if any of the grounds advanced by Cimm is meritorious. *See Cincinnati Life Ins. Co.*

5

*v. Cates*, 927 S.W.2d 623, 625–26 (Tex. 1996); *Weiner v. Wasson*, 900 S.W.2d 316, 317 n.2 (Tex. 1995).

## Premises Liability

In her sole issue, East argues that the trial court erred in granting Cimm summary judgment on her claim because she presented more than a scintilla of probative evidence to raise a genuine issue of material fact on each of the challenged elements of her claim, whether sounding in negligence or premises liability.

In her fourth amended petition, East characterizes her suit against Cimm as a one for general negligence. Her allegations are, however, that Cimm failed to inspect its premises and warn her of a dangerous condition that existed on its floor. The applicable cause of action for such allegations is one of premises liability. *See Bendigo v. City of Hous.*, 178 S.W.3d 112, 116–17 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (holding no separate general negligence duty exists for premises owner to exercise ordinary care to inspect for dangers on premises; limiting evaluation of summary judgment to premises-liability claim).

To prevail on a premises-liability claim, a plaintiff must prove that (1) the owner had actual or constructive knowledge of some condition on the premises; (2) the condition posed an unreasonable risk of harm; (3) the owner did not exercise reasonable care to reduce or eliminate the unreasonable risk of harm; and (4) the

owner's failure to use reasonable care to reduce or eliminate the unreasonable risk of harm proximately caused the plaintiff's injuries. *LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex. 2006); *Wal–Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998). In its no-evidence summary-judgment motion, Cimm separately argued that East had no evidence of any of the essential elements of her premises-liability claim.

### *Constructive Knowledge*

Actual or constructive knowledge of a premises defect is the threshold requirement of a premises-liability claim. *Motel 6 G.P., Inc. v. Lopez*, 929 S.W.2d 1, 3 (Tex. 1996). A slip-and-fall plaintiff satisfies the knowledge element by establishing that (1) the defendant placed the substance on the floor; (2) the defendant actually knew that the substance was on the floor; or (3) it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it in the exercise of ordinary care. *Wal–Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002).

Here, Cimm asserts that there is "absolutely no evidence that [it] had actual or constructive knowledge of the condition" alleged or "its employees put a substance on the floor or were aware of any substance on the floor at the time that the incident occurred." Cimm asserts that East testified in her deposition that she "did not know whether the condition existed at the time of the incident." However,

the record reveals that East was actually asked, "Do you know *what* you slipped on?" (Emphasis added.) And she merely replied, "I do not know." East simply stated that she did not know what substance caused her fall.

Because East does not allege that Cimm placed the substance on the floor or had actual knowledge of its presence, she was required to produce more than a scintilla of evidence raising a genuine issue of material fact that "it is more likely than not that the condition [of the floor] existed long enough to give [Cimm] a reasonable opportunity to discover it" in the exercise of ordinary care. *Id.*

In *Reece*, the plaintiff, after purchasing food from a Wal-Mart snack bar, slipped and fell in a puddle of clear liquid on the floor in front of self-serve drink machines. 81 S.W.3d at 813–14. The evidence showed that a Wal-Mart employee had, just moments before Reece's fall, walked past, but did not see, the puddle. *Id.* at 814. Reece brought a premises-liability claim against Wal-Mart, and the trial court rendered judgment in her favor on a jury's verdict. *Id.* The court of appeals affirmed, noting the employee's proximity to the puddle, together with Wal-Mart's knowledge of the propensity for spills in that area and store policy regarding dangerous conditions, was sufficient to establish constructive notice. *Id.*

The Texas Supreme Court reversed, concluding that, notwithstanding the employee's proximity, there was no other evidence to support the conclusion that Wal-Mart had constructive notice of the dangerous condition because there was no

8

evidence (1) of how long the spill had existed before the plaintiff's fall; (2) that the spill was conspicuous (it was "not large" and "consisted of a clear liquid on a light tile floor"); (3) that the employee saw the spill or it was there when he approached the counter; or (4) concerning the condition of the spilled liquid that might indicate how long it had been on the floor. *Id.* at 816–17.

The court noted that "[w]hat constitutes a reasonable time for a premises owner to discover a dangerous condition will, of course, vary depending upon the facts and circumstances presented." *Id*. at 816. And evidence that a premises-owner's employee was in close proximity to a dangerous condition just before an invitee's fall is "relevant to the analysis." *Id*. Thus, the court explained that

> if the dangerous condition is conspicuous as, for example, a large puddle of dark liquid on a light floor would likely be, then an employee's proximity to the condition might shorten the time in which a jury could find that the premises owner should reasonably have discovered it. Similarly, if an employee was in close proximity to a less conspicuous hazard for a continuous and significant period of time, that too could affect the jury's consideration of whether the premises owner should have become aware of the dangerous condition.

*Id.* In either case, however, "there must be some proof of how long the hazard was there before liability can be imposed on the premises owner for failing to discover and rectify, or warn of, the dangerous condition." *Id.* at 816. This requirement exists because, otherwise, owners would face strict liability for any dangerous condition on their premises, an approach the court has clearly rejected. *Id*.

Nevertheless, the court appears to recognize that a situation may arise in which a premises owner could quickly become aware of a dangerous condition and warn an approaching invitee of the danger. And such a situation could occur in a matter of seconds.

Here, Tommy testified that East "slipped on a *dirty* liquid substance" at the cash register after she paid for her food. (Emphasis added.) And East testified that she was only "seven or eight steps" away from the cash register when she slipped. Thus, there is direct evidence that Cimm's employees were in close proximity to the conspicuous, "extremely dirty" liquid on the floor before East fell. *See Reece*, 81 S.W.3d at 814.

Tommy further testified that the slippery condition was present on the floor from the entryway of the restaurant to the cash registers, as follows:

> The floor was dirty and when we entered the Burger King the floor was slippery. There was a liquid substance on the floor that was *extremely dirty*. I was slipping on the floor myself. There were no signs post[ed] warning of the slippery and unclean floor. There [were] also no barriers blocking [the] area of the floor that was extremely slippery.

(Emphasis added.) Tommy noted that the "Burger King . . . was extremely dirty" and East slipped on "a dirty liquid substance that was on the unclean floor." He opined that the Burger King appeared as though it "had not been cleaned for several days." Thus, there is direct evidence that the condition of the floor was pervasive and had been allowed to persist for "days." *See id.* at 816–17.

10

We recognize that a general description of "dirtiness," alone, does not meet the temporal requirements of *Reece*. For example, in *Wal-Mart Stores, Inc. v. Gonzalez*, a shopper slipped on spilled macaroni salad that was described by the plaintiff's daughter as having "a lot of dirt" in it along with footprints and cart track marks. 968 S.W.2d 934, 936 (Tex. 1998). The Court held that the plaintiff's evidence was insufficient to establish that, more likely than not, the food had been on the floor long enough to charge Wal-Mart with constructive knowledge. *Id.* at 937. When the evidence makes it equally plausible that the dangerous condition just occurred as that it had been there a lengthier amount of time, that evidence is insufficient to charge the premises owner with constructive knowledge. *Id.* at 936.

Here, however, East is not relying solely on circumstantial evidence of the appearance of a single, small spill to infer the length of time the spill had gone unnoticed. Rather, East presented direct evidence that the condition of the floor between the entry door and the cash registers was "extremely dirty," "extremely slippery," and the restaurant appeared as though it "had not been cleaned for several days." *See H.E. Butt Grocery Co. v. Heaton*, 547 S.W.2d 75, 76 (Tex. Civ. App.—Waco 1977, no writ) (concluding testimony that "the same layer of dirt that was on the floor" covered spilled food and floor "looked like it hadn't been cleaned for awhile" justified inference that food had been on floor as long as surrounding dirt and present for prolonged period of time).

11

In sum, East presented direct evidence that she "slipped on a *dirty* liquid substance" just "seven or eight steps" away from cash registers manned by Cimm's employees who had served her. (Emphasis added.) The slippery condition existed on the floor from the entryway of the Burger King to the cash registers. Moreover, Tommy opined that the Burger King was so "extremely dirty," that it "looked like it had not been cleaned for several days."

Taking as true all evidence favorable to East and indulging every reasonable inference in her favor, as we must, we conclude that she presented more than a scintilla of evidence from which a fact finder could reasonably infer that it is more likely than not that the condition of the floor existed long enough to afford Cimm a reasonable opportunity to discover it in the exercise of ordinary care, especially given the close proximity of Cimm's employees to the "extremely dirty substance." *See Reece*, 81 S.W.3d at 816 ("[I]f the dangerous condition is conspicuous as, for example, a large puddle of dark liquid on a light floor would likely be, then an employee's proximity to the condition might shorten the time in which a jury could find that the premises owner should reasonably have discovered it."); *see also Ridgway*, 135 S.W.3d at 600; *Gonzalez*, 968 S.W.2d at 936.

*Unreasonable Risk of Harm*

As to the second element, a condition poses an unreasonable risk of harm for premises-defect purposes when there is a "sufficient probability of a harmful event

occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen." *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002). Foreseeability in this context "does not require that the exact sequence of events that produced an injury be foreseeable." *Id*. Instead, only the general damage must be foreseeable. *Id*.

Whether a particular condition poses an unreasonable risk of harm is generally fact specific:

> It is important to note that reasonableness determinations such as the one here are fact-intensive inquiries and, as such, are issues well-suited for a jury's determination. Indeed, as the Texas Supreme Court commented in one of the cases cited by appellant, there is no definitive, objective test that may be applied to determine whether a specific condition presents an unreasonable risk of harm.

*Hall v. Sonic Drive-In of Angleton, Inc*., 177 S.W.3d 636, 646 (Tex. App.— Houston [1st Dist.] 2005, pet. denied).

Here, East's summary-judgment evidence establishes that she slipped and was injured on "a dirty liquid substance that was on the unclean floor" at Cimm's Burger King, the restaurant was "extremely dirty" overall, and "looked like it had not been cleaned for several days." The exact sequence of events is not in dispute. "A foreign substance on a floor can be an unreasonably dangerous condition." *Pipkin v. Kroger Tex.*, *L.P*., 383 S.W.3d 655, 672 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

13

Taking as true all evidence favorable to East and indulging every reasonable inference in her favor, as we must, we conclude that East presented more than a scintilla of evidence raising a genuine issue of material fact as to whether the dirty, liquid substance on the floor constituted an unreasonably dangerous condition. *See id.*; *Brown*, 80 S.W.3d at 556; *see also Ridgway*, 135 S.W.3d at 600; *Gonzalez*, 968 S.W.2d at 936.

### *Failure to Exercise Reasonable Care*

As to the third element, the duty to use ordinary care toward invitees includes the duty to inspect the premises, and a premises owner is charged with constructive knowledge of any premises defect or other dangerous condition that a reasonably careful inspection would have revealed. *See CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 101 (Tex. 2000); *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex. 1983). When a premises owner has notice of a condition on the premises that poses an unreasonable risk of harm, he has a duty to take whatever action is reasonably prudent under the circumstances to reduce or eliminate the unreasonable risk. *Corbin*, 648 S.W.2d at 295. A defendant breaches its duty of care if it fails to exercise ordinary care to protect the plaintiff from danger by failing to adequately warn of the condition and make the condition reasonably safe. *See Reece*, 81 S.W.3d at 814; *CMH Homes*, 15 S.W.3d at 101.

Here, Tommy testified that "[t]here were no signs post[ed] warning of the slippery and unclean floor" and there were "no barriers blocking [the] area of the floor that was extremely slippery." *See Pipkin*, 383 S.W.3d at 672.

Taking as true all evidence favorable to East and indulging every reasonable inference in her favor, as we must, we conclude that East presented more than a scintilla of evidence raising a genuine issue of material fact that Cimm failed to exercise reasonable care to protect East from danger by failing to adequately warn her of the condition and make the condition reasonably safe. *See Ridgway*, 135 S.W.3d at 600; *Gonzalez*, 968 S.W.2d at 936.

*Proximate Cause*

Finally, to prevail on a premises-liability claim, an invitee must establish that the defendant's lack of care proximately caused her injuries. *Hall*, 177 S.W.3d at 647. The components of proximate cause are (1) cause-in-fact and (2) foreseeability. *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex. 1996). A defendant's negligence is a cause-in-fact of the plaintiff's injuries if the negligent act or omission constituted a "substantial factor" in bringing about the injury, without which the harm would not have occurred. *Hall*, 177 S.W.3d at 648 (citing *Doe v. Boys Clubs of Greater Dallas*, 907 S.W.2d 472, 477 (Tex. 1995)). Foreseeability "means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others." *Id.*

15

Foreseeability does not require that a person anticipate the precise manner in which an injury will occur once he has created a dangerous situation through his negligence. *Id.* It requires only that the general danger, not the exact sequence of events that produced the harm, be foreseeable. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).

In its summary-judgment motion, Cimm asserted that "there is no evidence that [it] placed the substance on the floor on the date of the incident or that the floor was wet at the time of the incident."

However, East presented Tommy's testimony that she did in fact slip "on a dirty liquid substance that was on the unclean floor" at Cimm's Burger King restaurant, which "was the cause of [her] fall" and "caused [her] to break her hip." Jackie testified that East was transported from the Burger King to a hospital by ambulance; East's doctor told Jackie that East suffered from a broken hip due to the fall and she required immediate surgery; and East remained in the hospital for one week after the surgery, spent three weeks in rehabilitation, and has since been unable to walk unassisted. Jackie further testified that East "incurred injuries and medical expenses as a result of her fall from the unclean and unsafe floor."

Taking as true all evidence favorable to East and indulging every reasonable inference in her favor, as we must, we conclude that East presented more than a scintilla of evidence raising a genuine issue of material fact on whether Cimm's

acts constituted substantial factors in bringing about East's injuries and whether the general danger posed to East and the general character of her injury should have been reasonably anticipated by Cimm. *See Ridgway*, 135 S.W.3d at 600; *Gonzalez*, 968 S.W.2d at 936.

## Conclusion

Having concluded that East presented some evidence on each of the challenged elements of her premises-liability claim, we hold that the trial court erred in granting Cimm summary judgment and sustain her sole issue. We reverse the judgment of the trial court and remand the case for further proceedings not inconsistent with this opinion.

Terry Jennings
Justice

Panel consists of Justices Jennings, Sharp, and Brown.

Justice Brown, dissenting.