Donald PARKER, Appellant,

v.

VALERUS COMPRESSION SERVICES, LP, Appellee.

No. 01–10–00916–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 25, 2011.

Savannah Lina Robinson, Law Office of S. Robinson, Danbury, TX, for Appellant.

Fazila Issa, Kerry E. Notestine, Littler Mendelson, P.C., Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices SHARP and BROWN.

## OPINION

HARVEY BROWN, Justice.

Donald Parker sued his employer Valerus Compression Services, LP for wrongful termination and retaliation based on his filing of a workers' compensation claim, among other grounds. Valerus denied Parker's allegations and asserted that it terminated him in accordance with its absentee policy after he spent eight months on medical leave. Valerus filed traditional and no-evidence motions for summary judgment asserting that Parker failed to meet his prima facie burden to show a causal link between his workers' compensation claim and Valerus's actions against him or, alternatively, that he failed to controvert its neutral non-discriminatory reason for terminating him. The trial court granted Valerus's summary judgment motions. Parker contends on appeal that the trial court erred in granting summary judgment because (1) he presented sufficient evidence on all the elements of retaliation to satisfy a prima facie case; (2) a fact issue exists on the causation element; (3) a fact issue exists regarding the "cat's paw" theory of discrimination in the decision to terminate him; and (4) his damage claims are not barred as a matter of law.

We affirm.

## Background

Parker worked as a pipe welder in a Valerus manufacturing facility. On June

11, 2007 he injured his back while lifting a barrel containing scrap iron and other industrial trash. The next week, Parker went to Dr. James Shook, an orthopedic surgeon, who recommended that he take over-the-counter pain medications and apply hot and cold compresses to his back as needed. Dr. Shook released Parker to return to work without restrictions. A second doctor released Parker to return to work without restrictions two and a half weeks after the accident.

Parker returned to Dr. Shook almost a month after the accident. At this time, Dr. Shook reiterated that Parker could return to work, but issued restrictions against pushing, pulling, twisting, climbing stairs or ladders, and any lifting or carrying. In response to Parker's restrictions, Valerus assigned him the light duty tasks of only welding "roll-outs," which Parker described as the easiest part of a welder's job because it does not involve moving around or under the pipe.[1] Parker filed a workers' compensation claim.

Parker saw Dr. Shook again two months after the accident. Dr. Shook reiterated Parker's previous restrictions with additional limitations that he not work more than eight hours, that he not lift more than 10 pounds more than six hours a day, and that he refrain from standing, sitting, kneeling, squatting, walking, squeezing, wrist extension, and reaching. Dr. Shook stated that Parker could return to work in a sedentary capacity and could work on moving machinery or operate a motor vehicle. Dr. Shook also stated that the restrictions should expire in September.

Other employees complained that Parker was given all of the roll-out welding—

work that was easier than other welding tasks and, therefore, their jobs were correspondingly more difficult. In response, Valerus assigned Parker to a night-shift position operating a sub-arc welding machine in August, a position that would involve minimal lifting, pulling, or movement under pipes. Parker performed the job for two to three days before informing his supervisor that he could not continue because of his restrictions. Parker met with his supervisor and several other managers on August 20th to discuss his work assignments. He requested a position in the safety office, but was told that was not possible because of personality conflicts. He was also told that he could not continue to perform roll-outs exclusively, as no welder did only roll-outs, and that he would need to accept the sub-arc machine position.[2] Parker insisted that he could not perform this work, left the meeting, was placed on medical leave, and never returned to work at Valerus.

In February 2008, over eight months after the accident, Dr. Shook issued another report for Parker stating that he could return to work with the limitation that he only work eight hours a day and refrain from squatting, kneeling, bending, stooping, pushing, pulling, or lifting more than 50 pounds or lifting more than 25 pounds frequently. Dr. Shook also stated that Parker had a personal impairment rating of five percent.

Jim Nicholson, the newly appointed vice president of human resources for Valerus, began reviewing the status of employees on extended leave in April 2008. Nicholson testified in his affidavit that his review took several months and included eight

---

1. Parker testified that roll-outs are "small pieces of pipe that you stand right there and you roll them out. You don't have to bend. You don't have to squat. You don't have to do anything but roll them out. They don't weigh more than 25, 30 pounds, max."

2. Parker agreed in his deposition that no employee performed roll-outs full-time.

injured employees, four with workers' compensation claims and four without workers' compensation claims. Nicholson testified that Parker requested to be placed on medical leave after trying the sub-arc position for several days. Nicholson stated that he terminated Parker, along with the other seven employees on extended medical leave, because the reports from Parker's doctor indicated that Parker could not perform the essential functions of his job and Nicholson saw no evidence that Parker was likely to return to work in the foreseeable future. Valerus fired Parker on April 15, 2008, approximately ten months after the accident and eight months after his last day on the job. Parker testified by deposition that Valerus never informed him that he needed to return to work by a specific time, that he had been fired, or that he was eligible for reemployment. Parker testified that he later applied for reemployment, but was not given a position.

Parker sued Valerus for workers' compensation retaliation and discrimination and retaliation on the basis of age and disability. *See* TEX. LAB.CODE ANN. § 451.001 (West 2010) (workers' compensation retaliation); TEX. LAB.CODE ANN. § 21.051 (West 2006) (age and disability discrimination); TEX. LAB.CODE ANN. § 21.055 (West 2006) (age and disability retaliation). Valerus filed a traditional and no-evidence motion for summary judgment on all claims. As summary judgment evidence, Valerus relied on Dr. Shook's reports indicating Parker's work restrictions, Nicholson's affidavit, and the policies outlined in Valerus's employee handbooks. It also relied on Parker's deposition testimony.

The trial court granted summary judgment on all claims. Parker appealed the trial court's judgment on his workers' compensation retaliation claim under Labor Code section 451.001. He did not appeal his remaining claims for age and disability discrimination and retaliation.

## Standard of Review

■ We review a trial court's summary judgment de novo. *Travelers Ins. Co. v. Joachim,* 315 S.W.3d 860, 862 (Tex.2010). If a trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any of the grounds are meritorious. *Beverick v. Koch Power, Inc.,* 186 S.W.3d 145, 148 (Tex.App.-Houston [1st Dist.] 2005, pet. denied). The motion must state the specific grounds relied upon for summary judgment. *See* TEX.R. CIV. P. 166a(c), (i); *Timpte Indus., Inc. v. Gish,* 286 S.W.3d 306, 310 (Tex. 2009). When reviewing a summary judgment motion, we must (1) take as true all evidence favorable to the nonmovant and (2) indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005); *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003).

A party seeking summary judgment may combine in a single motion a request for summary judgment under the no-evidence standard with a request under the traditional summary judgment standard. *Binur v. Jacobo,* 135 S.W.3d 646, 650 (Tex. 2004). When a party has filed both a traditional and no-evidence summary judgment motion and the order does not specify which motion was granted, we typically first review the propriety of the summary judgment under the no-evidence standard. *See* TEX.R. CIV. P. 166a(i); *see Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 600 (Tex. 2004). If the no-evidence summary judgment was properly granted, we need not reach arguments under the traditional motion for summary judgment. *See Mack*

*Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 576–77 (Tex.2006).

To prevail on a no-evidence motion for summary judgment, the movant must establish that there is no evidence to support an essential element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *See* Tex.R. Civ. P. 166a(i); *Hahn v. Love*, 321 S.W.3d 517, 523–24 (Tex.App.-Houston [1st Dist.] 2009, pet. denied). The burden then shifts to the nonmovant to present evidence raising a genuine issue of material fact as to each of the elements specified in the motion. *Mack Trucks*, 206 S.W.3d at 582; *Hahn*, 321 S.W.3d at 524.

In a traditional summary judgment motion, the movant has the burden to show that no genuine issue of material fact exists and that the trial court should grant judgment as a matter of law. Tex.R. Civ. P. 166a(c); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). A defendant moving for traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997).

### Workers' Compensation Retaliation

In his sole issue on appeal, Parker contends the trial court erred in granting Valerus's traditional and no-evidence summary judgment motions. He asserts that summary judgment was improper because (1) he presented sufficient evidence on all the elements of retaliation to satisfy a prima facie case; (2) a fact issue exists on the causation element; (3) a fact issue exists regarding the "cat's paw" theory of discrimination in the decision to terminate him; and (4) his damage claims are not barred as a matter of law.

### A. Retaliation & Burden Shifting

◼ Labor Code section 451.001 states that an employer may not discharge, or in any other manner discriminate, against an employee because that employee has filed a workers' compensation claim in good faith. *See* Tex. Lab.Code Ann. § 451.001; *Terry v. S. Floral Co.*, 927 S.W.2d 254, 256–57 (Tex.App.-Houston [1st Dist.] 1996, no writ); *Montgomery v. Valerus Compression Servs., L.P.*, No. 01–10–00716–CV, 2011 WL 3240829, at *3 (Tex.App.-Houston [1st Dist.] July 28, 2011, no pet. h.). The purpose of the statute is to protect a person entitled to workers' compensation benefits from retaliation for exercising their statutory rights. *See Terry*, 927 S.W.2d at 256. An employee who shows a violation of section 451.001 may recover "reasonable damages incurred by the employee as a result of the violation." Tex. Lab.Code Ann. § 451.002 (West 2010).

◼ Texas employs a burden shifting analysis for workers compensation retaliatory discharge claims under section 451.001. *See, e.g., Benners v. Blanks Color Imaging, Inc.*, 133 S.W.3d 364, 369 (Tex.App.-Dallas 2004, no pet.). As part of its prima facie case, the employee "has the initial burden of demonstrating a causal link between the discharge and the filing of the claim for workers' compensation benefits." *Terry*, 927 S.W.2d at 257. *See also Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex.1996) (applying standard of proof for causation in whistleblower actions to anti-retaliation claims under workers' compensation); *Wal–Mart Stores, Inc. v. Amos*, 79 S.W.3d 178, 184 (Tex.App.-Texarkana 2002, no pet.) (stating that as "an element of a *prima facie* case for retaliatory discharge" the employee must "demonstrate the causal link between the discharge and the filing of the claim"); *Dallas Cnty. v. Holmes*, 62

S.W.3d 326, 329 (Tex.App.-Dallas 2001, no pet.) (stating that plaintiff must "prove a prima facie case" by establishing that "he, in good faith, filed a workers' compensation claim, and there exists a causal connection between the filing of the claim and the discharge or other act of discrimination."). The employee does not need to show that the workers' compensation claim was the sole reason for the employer's conduct; it is sufficient to demonstrate that but for the filing of the claim, "the employer's action would not have occurred when it did had the report not been made." *Cont'l Coffee*, 937 S.W.2d at 450; *Turner v. Precision Surgical, L.L.C.*, 274 S.W.3d 245, 252 (Tex.App.-Houston [1st Dist.] 2008, no pet.). In other words, the filing of the workers compensation claim must be a reason for the employer's adverse employment action, but not necessarily the reason.

An employee may prove the causal link between the adverse employment decision and the workers compensation claim by direct or circumstantial evidence. *Jenkins v. Guardian Indus. Corp.*, 16 S.W.3d 431, 436 (Tex.App.-Waco 2000, pet. denied). Circumstantial evidence of the causal link includes:

(1) knowledge of the compensation claim by those making the decision on termination; (2) expression of a negative attitude towards the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for the discharge was false.

*Cont'l Coffee*, 937 S.W.2d at 451; *Benners*, 133 S.W.3d at 369. Little or no lapse in time between the plaintiff's compensation claim and the employer's adverse employment action is also circumstantial evidence of a retaliatory motive. *Johnson v. City of Houston*, 203 S.W.3d 7, 11 (Tex.App.-Houston [14th Dist.] 2006, pet. denied). *See also Green v. Lowe's Home Ctr., Inc.*, 199 S.W.3d 514, 519 (Tex.App.-Houston [1st Dist.] 2006, pet. denied) (stating that temporal proximity between assertion of a protected right and termination may be evidence of a causal connection). This evidence is relevant for determining whether a causal link exists, both in examining whether the employee established a prima facie case and the ultimate issue of whether the employee proved a retaliatory motive for the adverse employment action. *See generally Hertz Equip. Rental Corp. v. Barousse*, 365 S.W.3d 46, 54–57 (Tex.App.-Houston [1st Dist.] 2011, no pet. h.) (reviewing circumstantial evidence identified in *Cont'l Coffee* to determine whether evidence was legally and factually sufficient to support finding of retaliatory discharge); *Green*, 199 S.W.3d at 518–523 (reviewing circumstantial evidence identified in *Cont'l Coffee* to determine whether plaintiff established fact issue in response to summary judgment motion).

Once the employee establishes a prima facie claim, including a causal link, the burden shifts to the employer to rebut the alleged discrimination by offering proof of a legitimate, non-discriminatory reason for its actions. *Green*, 199 S.W.3d at 519; *Benners*, 133 S.W.3d at 369.

If the employer demonstrates a legitimate, non-discriminatory reason, then the burden shifts back to the employee "to produce controverting evidence of a retaliatory motive" in order to survive a motion for summary judgment. *Green*, 199 S.W.3d at 519. *See also Tex. Div.-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 314 (Tex.1994) (employee must controvert employer's neutral explanation of employment decision based on direct or circumstantial evidence). The employee must present evidence that the employer's as-

serted reason for the discharge or other adverse employment action was pretextual or "challenge the employer's summary judgment evidence as failing to prove as a matter of law that the reason given was a legitimate, nondiscriminatory reason." *Benners,* 133 S.W.3d at 369. Summary judgment is proper if the employee fails to produce controverting evidence. *Terry,* 927 S.W.2d at 257 (affirming summary judgment for employer because employee failed to produce evidence of retaliatory motive to rebut employer's neutral reason for firing her); *Benners,* 133 S.W.3d at 369, 372 (holding summary judgment proper because employee failed to raise a fact issue on retaliatory motive); *Castor v. Laredo Cmty. Coll.,* 963 S.W.2d 783, 785–86 (Tex.App.-San Antonio 1998, no pet.) (holding employee failed to raise fact issue on retaliatory motive despite indulging all inferences in his favor).

## B. Treatment in Comparison to Similarly Situated Employees

■ Parker maintains that he raised a fact issue on causation sufficient to show a causal link and to negate Valerus's non-discriminatory reason for his termination, the uniform application of its absentee policy. Valerus disputes that Parker presented sufficient evidence to establish the causal link necessary to establish his prima facie case, and further contends that Parker's evidence fails to controvert its neutral reason. We will assume without deciding that Parker presented sufficient evidence to satisfy his prima facie burden and turn to his evidence to negate Valerus's non-discriminatory reason.

■ While courts generally examine the six pieces of circumstantial evidence listed above to determine if a fact issue exists on the causal link, the focus is narrower in workers' compensation retaliation claims arising from enforcement of leave policies. When an employer provides proof that it terminates an employee pursuant to a uniformly applied leave of absence policy, a terminated employee must provide competent evidence that the employer treated him differently from similarly situated employees in order to survive a summary judgment motion. *See Haggar Clothing Co. v. Hernandez,* 164 S.W.3d 386, 388–89 (Tex.2005) (per curiam); *Larsen v. Santa Fe Indep. Sch. Dist.,* 296 S.W.3d 118, 131 (Tex.App.-Houston [14th Dist.] 2009, pet. denied). "If an employee's termination is required by the uniform enforcement of a reasonable absentee policy, then it cannot be the case that termination would not have occurred when it did but for the employee's assertion of a compensation claim...." *Cont'l Coffee,* 937 S.W.2d at 451. *See also Cavender v. Houston Distrib. Co.,* 176 S.W.3d 71, 72–73 (Tex.App.-Houston [1st Dist.] 2004, pet. denied); *Alonso v. Stanley Works, Inc.,* 111 S.W.3d 850, 852 (Tex.App.-Dallas 2003, no pet.). Summary judgment on a workers' compensation retaliation claim is proper if the employee's absence from work exceeded the employer's leave policy and the employer enforced the policy uniformly. *See Cont'l Coffee,* 937 S.W.2d at 451; *Montgomery,* 2011 WL 3240829, at *4 (citing cases stating summary judgment properly granted when employee unable to controvert evidence of employer's uniform application of leave of absence policy). In none of these cases did the courts review the other pieces of circumstantial evidence to determine whether a fact issue existed.

Valerus presented evidence of its leave of absence policy through its employee handbooks and the Nicholson's affidavit. Both indicate that Valerus may terminate an employee on extended leave if the employee remains absent more than three months. Nicholson testified in his affidavit that he began reviewing all employees

on extended leave shortly after his appointment of as vice-president of human resources. His review resulted in the firing of eight employees on leave, including Parker. Four of those employees filed workers' compensation claims but four did not. He also identified 12 employees who had filed workers' compensation claims and then returned to work.

■ Parker identifies two employees who he claims were similarly situated but treated differently by Valerus. "Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct." *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex.2005). Parker testified in his deposition that two installers in their early-twenties were injured on the job, placed on light duty, and assigned tasks that Parker described as "piddly stuff." He could not provide any more detail as to the names or light duty assignments of these employees, but he described their injuries as "on the job" and "recordable incidents." Nothing in the record indicates whether these employees filed workers' compensation claims. Parker also does not describe their job duties sufficiently to show that they performed similar tasks to his before their injuries. The record also does not indicate the duration or extent of their light duty assignments.

Parker has not identified "a single Valerus employee on extended leave of absence who had not filed a workers' compensation claim but had been retained by Valerus." Parker's conclusory statements about the treatment of other employees are insufficient to raise a fact issue. *See Larsen*, 296 S.W.3d at 131. Therefore, he has not presented any evidence of a similarly situated employee to rebut Valerus's non-discriminatory reason for his termination.[3] *See Cavender*, 176 S.W.3d at 73.

## Conclusion

■ We hold Parker did not raise a fact issue on whether he was discharged for making a workers' compensation claim. Therefore, the trial court properly granted summary judgment on his workers' compensation retaliation claim. Because we find summary judgment to be proper on one ground raised by Valerus in its summary judgment motion, we need not address Parker's remaining arguments regarding the cat's paw theory of liability or damages. *See Montgomery*, 2011 WL 3240829, at *7; *Beverick*, 186 S.W.3d at 148. We affirm the judgment of the trial court.

3. We also note that Parker denied in his deposition testimony that he was terminated or discriminated against because of his workers' compensation claim. He instead focused on his age discrimination claim. In the deposition, Valerus asked Parker, "[O]ne of the claims that you have in this lawsuit is that Valerus treated you badly for filing a workers' compensation claim. Do you agree?" Parker responded, "I never said they treated me badly for drawing a workman's comp claim because they never discussed it with me. So I disagree." He also testified that he did not notice a negative attitude or that he had been treated differently after his injury. Again, he focused on his age discrimination claim. Throughout his deposition, Parker stated that younger employees were treated differently and that the only time anyone at Valerus had been rude or made jokes about him was to call him an "old man." This evidence further supports the trial court's decision to grant summary judgment on his workers' compensation retaliation claim.