**Opinion issued July 15, 2014.**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-13-00773-CV**

———————————

**JUDY COWARD, Appellant**

**V.**

**H.E.B., INC., Appellee**

---

**On Appeal from the 295th District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-24693**

---

**MEMORANDUM OPINION**

Judy Coward sued HEB Grocery Company to recover damages for injuries she sustained when she slipped and fell on a puddle of water while shopping at the grocery store. The trial court granted HEB's motions for traditional and no-evidence summary judgment. On appeal, Coward contends that the trial court erred

in granting summary judgment to HEB because she had raised a genuine issue of material fact that HEB had actual or constructive knowledge of a dangerous condition on the premises. We affirm the trial court's judgment.

## Background

Coward was shopping at an HEB grocery store when she slipped and fell in a puddle of water covering "a large area" of an aisle, injuring her back. According to Coward, the water puddle was not deep, but was similar to "a recently mopped floor." After falling, Coward saw water trickling from the ceiling, hitting nearby shelves and products, dripping onto the floor, and gradually forming a puddle. But Coward "never saw any large quantity of water coming from the ceiling or water pouring downward."

In response to the accident, several store employees, including the store manager, Mary Clark, came to Coward's aid, and one employee called for a maintenance person to mop the floor. Before the accident, Clark had been walking another aisle, looking for overhead water leaks. According to Clark, the store had previously experienced water leaks during heavy rains. Coward testified that there were two bakery shop employees working approximately nine steps from the main aisle, near the end of the aisle where she fell. But neither Clark nor any other HEB employee testified that they saw water in the aisle before Coward fell. Store reports reveal that in the two years before Coward's accident the store had suffered roof

leaks. However, none of the reports specifically identified leaks in the area of the store where Coward slipped and fell.

HEB filed a motion for no-evidence and traditional summary judgment, arguing that Coward could produce no evidence that HEB knew or should have known that there was water on the floor and that Coward had legally insufficient evidence to support her claims. In support of the motion, HEB attached a transcript of Coward's deposition testimony. Coward responded, arguing that her own affidavit testimony and store manager Clark's testimony presented sufficient evidence that HEB had knowledge of the dangerous condition. Specifically, Coward argued that (1) the prior leaks put the store manager on notice that the ceiling was likely to leak and (2) the length of time that the water was on the floor supported the store's constructive knowledge of that leak.

The trial court granted summary judgment to HEB. Coward filed a motion for new trial, which was overruled by operation of law. This appeal followed.

**Standard of Review**

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim,* 315 S.W.3d 860, 862 (Tex. 2010). If a trial court grants summary judgment without specifying the grounds for doing so, as is the case here, we must uphold the trial court's judgment if any of the grounds relied on by the movant is meritorious. *Parker v. Valerus Compression Servs., LP*, 365 S.W.3d 61, 65 (Tex. App.—

Houston [1st Dist.] 2011, pet. denied). When reviewing a summary judgment motion, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

A party seeking summary judgment may combine in a single motion a request for summary judgment under the no-evidence standard with a request under the traditional, as-a-matter-of-law standard. *Binur v. Jacobo*, 135 S.W.3d 646, 650 (Tex. 2004). If a motion argues both bases for summary judgment and the order does not specify which motion was granted, we typically review the propriety of the summary judgment under the no-evidence standard first. *See Parker*, 365 S.W.3d at 65. If the no-evidence summary judgment was properly granted, we need not reach arguments on the traditional motion for summary judgment. *See id.*

To prevail on a no-evidence motion for summary judgment, the movant must establish that there is no evidence to support an essential element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i); *Hahn v. Love*, 321 S.W.3d 517, 523–24 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). On review, we determine whether the nonmovant produced more than a scintilla of probative evidence to raise a genuine issue of material fact for each challenged element. *Colson v. Grohman*, 24

S.W.3d 414, 420 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). More than a scintilla of evidence exists if the evidence offered "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003), *cert. denied*, 541 U.S. 1030, 124 S. Ct. 2097 (2004).

### Objections to Evidence

We first address HEB's contention that Coward's affidavit was insufficient to raise a genuine issue of material fact because it was based on her "opinions, speculations and conclusions about the source, formation, and longevity of the water" on the floor. Coward responds that there is no speculation in her affidavit, that it does not contain any factual or legal conclusions, and that HEB waived any error by failing to raise these objections in the trial court.

Texas Rule of Civil Procedure 166a(f) requires an affidavit to show that it is made by a person who is competent to testify on the matter. TEX. R. CIV. P. 166a(f); *Rizkallah v. Conner*, 952 S.W.2d 580, 586 (Tex. App.—Houston [1st Dist.] 1997, no pet.). Texas law divides defects in summary judgment affidavits into two categories: (1) defects in form and (2) defects in structure. For the first category, defects in form, the complaining party must make an objection in the trial court and obtain a ruling at or before the summary judgment hearing. *See* TEX. R. APP. P. 33.1(a)(1); TEX. R. CIV. P. 166a(f); *Vice v. Kasprzak*, 318 S.W.3d 1, 11

5

(Tex. App.—Houston [1st Dist.] 2009, pet denied). When a trial court does not explicitly rule on an objection to the form of summary judgment evidence, its "ruling on an objection to summary-judgment evidence is not implicit in its ruling on the motion for summary judgment." *Delfino v. Perry Homes*, 223 S.W.3d 32, 35 (Tex. App.—Houston [1st Dist.] 2006, no pet.). For the second category, defects in substance, the complaining party may raise the issue for the first time on appeal. *See Dodge v. Durdin*, 187 S.W.3d 523, 532 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Objections that statements in an affidavit are conclusory are defects of substance and, therefore, may be raised for the first time on appeal. *Id.*; *see Rizkallah*, 952 S.W.3d at 587.

An affidavit is conclusory if it states "a conclusion without any explanation" or asks the factfinder to "take [the affiant's] word for it." *Arkoma Basin Exploration Co. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 389 (Tex. 2008); *see Rizkallah*, 952 S.W.2d at 587 ("A conclusory statement is one that does not provide the underlying facts to support the conclusion."). If Coward's affidavit contained conclusory statements—statements that failed to provide the underlying facts to support the conclusion—it was not proper summary judgment evidence. *See Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 637 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).

In reply to Coward's response to its motion for summary judgment, HEB argued that the following statements were conclusory: (1) "the leaks were steady in places described above, slower off the plastic lip of the shelf;" (2) "[w]ater was dripping from that general area;" and (3) "I fell on aisle 4, approximately 9 steps from the main aisle, and 17 steps from the bakery." Each of these statements was supported by factual statements within the affidavit and was within the scope of Coward's personal knowledge. *See Rizkallah*, 952 S.W.2d at 586; *Miller v. Raytheon Aircraft Co.,* 229 S.W.3d 358, 365–66 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("The personal knowledge requirement is satisfied if the affidavit sufficiently describes the relationship between the affiant and the case so that it may be reasonably assumed that the affiant has personal knowledge of the facts stated in the affidavit.").

Accordingly, we conclude that Coward's statements were competent summary judgment evidence. We next consider whether that and other evidence raised a fact issue to foreclose summary judgment.

## Premises Liability

Coward contends that the trial court erred in granting summary judgment to HEB because she raised a fact issue regarding whether HEB had actual or constructive knowledge of the alleged puddle on its floor.

7

Coward was HEB's invitee. Accordingly, HEB owed her a duty to exercise reasonable care to protect her from dangerous conditions that were either known or reasonably discoverable. *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998); *Bendigo v. City of Houston*, 178 S.W.3d 112, 114 (Tex. App.—Houston [1st Dist.] 2005, no pet.). To recover from HEB, Coward had the burden of proving that: (1) HEB had actual or constructive knowledge of some condition on the premises; (2) the condition caused an unreasonable risk of harm; (3) HEB did not exercise reasonable care to reduce or eliminate the risk; and (4) HEB's failure to use such care proximately caused her injuries. *See Ketch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992); *Bendigo*, 178 S.W.3d at 114. A plaintiff may satisfy the knowledge element by proving one of three things: (1) the defendant placed a substance on the floor; (2) the defendant actually knew the substance was on the floor; or (3) it is more likely than not that the dangerous condition had existed long enough to give the premises owner a reasonable opportunity to discover it. *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002); *Bendigo*, 178 S.W.3d at 114.

Coward contends that the evidence shows that HEB had both actual and constructive knowledge of a dangerous condition. We first consider whether Coward presented more than a scintilla of evidence that HEB had actual knowledge.

**A.      Whether HEB had actual knowledge of a dangerous condition**

Coward cites *City of San Antonio v. Rodriguez*, 931 S.W.2d 535, 536 (Tex. 1996), to support her contention that HEB had actual knowledge of the dangerous condition because the manager knew that the roof leaked during heavy rain. In *Rodriguez*, the Texas Supreme Court reversed the court of appeals's determination that a jury could have concluded that a leaky roof in a city recreation center was itself a dangerous condition and, therefore, the defendant's knowledge was conclusive. *Id.* at 536–37. The Court concluded that a leaky roof was not a dangerous condition, but a leaky roof could cause a dangerous condition, such as water on the floor. *Id*.

Following *Rodriguez*, knowledge of rain causing prior roof leaks is not equivalent to actual knowledge of a dangerous condition. To the contrary, the Court reasoned that whether knowledge could be inferred, "[d]epend[ed] on the position of the leaks above the floor and the amount of rain." *Id.* at 537. Coward cites to store manager Clark's testimony that she knew that it was raining, that the store roof had prior leaks when it rained, and that she was looking for leaks when Coward fell. Coward argued that their testimony established actual knowledge of a dangerous condition. However, this evidence does not demonstrate that HEB actually knew that there was a dangerous condition on the aisle where Coward fell.

9

*See id.* at 536 (holding leaky roof not dangerous condition itself); *see also Reece*, 81 S.W.3d at 814.

Accordingly, we conclude that there was no evidence to support the conclusion that HEB had actual knowledge of a dangerous condition.

### 1. Whether HEB had constructive knowledge of a dangerous condition

We next consider whether Coward presented more than a scintilla of evidence that the water had been on the floor for a sufficient period of time that HEB had a reasonable opportunity to discover it. *See Reece*, 81 S.W.3d at 814; *Bendigo*, 178 S.W.3d at 114. In determining whether to attribute constructive knowledge, courts analyze the combination of proximity, conspicuity, and longevity of the dangerous condition. *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 567–68 (Tex. 2006) (citing *Reece*, 81 S.W.3d at 816).

Temporal evidence, the length of time that the dangerous condition existed, provides the best indication of whether the store had a reasonable opportunity to discover a dangerous condition. *Reece*, 81 S.W.3d at 816. "An employee's proximity to a hazard, with no evidence indicating how long the hazard was there, merely indicates that it was *possible* for the premises owner to discover the condition, not that the premises owner reasonably *should* have discovered it." *Id*. Temporal evidence is necessary for the fact-finder to conclude that the store owner had an opportunity to discover the dangerous condition. *Id*.

Evidence of a dangerous condition's conspicuousness and the proximity of the property owner or its employees to the condition is relevant. *Reece*, 81 S.W.3d at 815–16. An inconspicuous spill would require close proximity to impose constructive knowledge. *Id.* (noting conspicuity could be determined based on evidence that there was "a dark liquid on a light floor"). However, evidence of close proximity and conspicuousness of a condition are insufficient, alone, to prove constructive knowledge; temporal evidence "of how long the hazard was there" is required. *Id.*

In her affidavit, Coward stated that after her fall, she saw "water dripping from the ceiling," "striking the floor, nearby shelves and products, and water from the shelves and products dripped onto the floor." She also noted that the ceiling leaks were "steady as were the leaks from the products, but slower and more deliberate as [they] trickled down the plastic brackets of the shelves and on to the floor." According to Coward, the water on the floor appeared like a recently mopped floor—not a big puddle.

Coward cites *Wal-Mart Stores, Inc. v. Tinsley*, 998 S.W.2d 664, 668 (Tex. App.—Texarkana 1999, pet. denied), to support her contention that the water was on the floor long enough for HEB to have discovered it. In *Tinsley*, the grocery store defendant had constructive knowledge of a dangerous condition when there was evidence that water slowly dripped from a dingy ceiling tile and formed a

large puddle and that the courtesy counter was near the puddle. *Id*. at 669. The court held that the plaintiff's testimony that she noticed "big circles and yellow stains" on ceiling tiles above her, some portion of the ceiling tiles appeared "darker, as if the tiles had recently been wet," and a store employee's testimony that when water would leak through the tiles, the water would "gather on the floor until someone discovered it" was sufficient to raise a fact issue about whether the dangerous condition "existed long enough to give" the grocery store a reasonable opportunity to discover the condition. *Id.* at 668–69.

Coward presented no evidence that would suggest that there had been prior leaks in the same area of the store where she fell. The evidence she presented indicated that the prior leaks were located in different parts of the store and were not always the result of rain. As examples, there were leaks involving a roof air conditioning unit leaking fluid, a window air conditioning unit leaking fluid, "ponding" on the roof, a skylight leaking, and the roof leaking in the front of the store. Furthermore, knowledge that it was raining and that rain could have caused leaks is not evidence of a dangerous condition; instead, it is evidence of the possibility of a dangerous condition. *See Rodriguez*, 931 S.W.2d at 536–37 (holding that "leaky roof was not itself a dangerous condition"). Such knowledge is not evidence of constructive knowledge absent any evidence of knowledge of prior rain leaks in the part of the store where Coward fell.

Coward cites *Kofahl v. Randall's Food & Drugs, Inc.*, 151 S.W.3d 679 (Tex. App.—Waco 2004, pet. denied), to argue that HEB had constructive knowledge because of the time it would take for the puddle to form on the store floor. In *Kofahl*, there was more than scintilla of evidence that the store had constructive knowledge based on testimony that the puddle was "large," with "very tacky and gummy" edges, as though the puddle had "start[ed] to dry up." *Id.* at 681 (citing *Kroger Stores, Inc. v. Hernandez*, 549 S.W.2d 16, 16–17 (Tex. App.— Dallas 1977, no writ) (attributing constructive knowledge when substance on floor was described as "dried where it looks like cake"); *Furr's, Inc. v. McCaslin*, 335 S.W.2d 284, 286–87 (Tex. App.—El Paso 1960, no writ) (attributing constructive knowledge based on evidence that substance on floor was described as "dry around the edges"); *Furr's v. Bolton*, 333 S.W.2d 688, 689–90 (Tex. App.—El Paso 1960, no writ) (attributing constructive knowledge based on evidence that substance on floor was "mashed and turned dark" and "had dried some around the edges")).

Coward, however, presented no similar evidence of dirt, track marks, or gummy surfaces that would indicate that the puddle in which she fell had "start[ed] to dry up" or otherwise indicate the water had been on the floor long enough to raise an issue of constructive knowledge. *See Kofahl*, 151 S.W.3d at 681; *cf. Safeway Stores, Inc. v. Harkless*, 601 S.W.2d 534, 537, 539 (Tex. App.—Tyler 1980, writ ref'd n.r.e.) (holding no constructive knowledge based on plaintiff

testimony that liquid was "brown" or dirty). At best, the evidence presented supports the possibility of a dangerous condition, rather than a dangerous condition itself. *See Gonzalez*, 968 S.W.2d at 936 (holding evidence of footprints and trackmarks in "fresh" substance on floor could "no more support the inference that [spill] accumulated dirt over a long period of time than it can support the opposite inference").

Lastly, Coward argues that HEB employees' close proximity to the dangerous condition supports the conclusion that HEB had constructive knowledge. Specifically, Coward testified that two bakery workers were just steps from the main aisle, near the end of aisle on which she fell. In *Wal-Mart Stores, Inc. v. Spates*, the Texas Supreme Court held that the store defendant did not have constructive knowledge of a dangerous condition based on evidence that a store employee was "directly behind" her when the plaintiff slipped and fell on an empty six-pack ring. 186 S.W.3d at 567–68. Despite the employee's proximity, the store did not have constructive knowledge because the only temporal evidence was the plaintiff's testimony that the ring had been on the floor for 30 to 45 seconds. *Id*. at 568.

Coward, likewise, fails to offer any temporal evidence to raise an issue of constructive knowledge based on this proximity. There is no evidence that the bakery employees were aware of or could have observed the condition about which

14

she complains. Furthermore, the only employee who testified to having walked the aisle before Coward's fall testified that she had seen no water on the floor 20 minutes before Coward's accident. Accordingly, Coward failed to present any evidence that the puddle was present long enough to allow the employees' close proximity to raise an issue of HEB's constructive knowledge of a dangerous condition. *See Mendoza v. Fiesta Mart, Inc.*, 276 S.W.3d 653, 656 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (holding no constructive knowledge because plaintiff failed to present temporal evidence and relied on argument that employees were "present in the store, and should have been aware of the dangerous condition").

Without any knowledge of how long the water was on the floor, we conclude that there was no evidence of one of the essential elements of Coward's claim. Accordingly, we conclude that the trial court did not err in granting summary judgment to HEB.[1]

**Conclusion**

We affirm.

---

[1] Because we conclude that the trial court properly granted HEB no-evidence summary judgment, we do not reach Coward's arguments regarding traditional summary judgment. *See Parker v. Valerus Compression Servs., LP*, 365 S.W.3d 61, 65 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).

                                    Harvey Brown
                                    Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.