

NUMBER 13-14-00478-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

PAUL SALAZAR,                                                                    Appellant,

v.

CROSSROADS MECHANICAL, INC.,                                       Appellee.

## On appeal from the 267th District Court
## of Victoria County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza and Longoria
### Memorandum Opinion by Justice Garza

Appellant Paul Salazar sued his former employer, appellee Crossroads Mechanical, Inc. ("CMI"), alleging wrongful termination in retaliation for his filing of a workers' compensation claim. *See* TEX. LAB. CODE ANN. § 451.001 (West, Westlaw through Chapter 46 2015 R.S.). The trial court granted CMI's traditional and no-evidence motion for summary judgment. By two issues, which we address as one, Salazar

contends that the trial court erred in granting summary judgment because (1) he presented sufficient evidence on all elements of retaliation to satisfy a prima facie case, and (2) a fact issue exists on the causation element. We affirm.

## I. BACKGROUND[1]

CMI, located in Victoria, Texas, provides air conditioning, heating, and ventilation duct services for residential and commercial properties. Salazar began working for CMI in June 2011. On May 30, 2012, he suffered an on-the-job injury when he tore his left rotator cuff. A workers' compensation claim was filed and Salazar received treatment and benefits through CMI's workers' compensation insurer. Salazar returned to work without restrictions on February 13, 2013.

While recuperating from his injuries, Salazar attended doctor's appointments at the Victoria Veterans' Affairs (VA) clinic and at the VA hospital in San Antonio, Texas. He also began participating in a voluntary research study at the San Antonio VA hospital, for which he was paid a small stipend of $25.00 per appointment. On April 5, 2013, Salazar took the day off to participate in the research study. He received permission to be absent that day from his supervisor, Jeffrey Bauknight, president of CMI. Bauknight testified that after granting Salazar permission to be absent on April 5, he noticed that the appointment documentation referenced "research." When Salazar returned to work the following Monday, Bauknight asked Salazar if he was involved in a research program. When Salazar confirmed that he was, Bauknight told him that he could be no longer be absent from work to participate in the voluntary research program. Salazar conceded in his

---

[1] The background facts are taken from evidence submitted by the parties, including testimony taken at an unemployment hearing before the Texas Workforce Commission on July 24, 2013; a workers' compensation administrative hearing on March 18, 2014; and deposition excerpts of Salazar and his supervisor, Jeffery Bauknight, president of CMI.

deposition testimomy that Bauknight "mention[ed] something" in April that he would not be permitted to take off work to participate in the research program.

On April 15, 2013, Salazar suffered a second on-the-job injury to his left shoulder, again tearing his rotator cuff. Salazar was unable to work until May 22, 2013, when he returned to work with light-duty restrictions.

On May 28, 2013, Salazar and Bauknight discussed Salazar's request to be absent from work on Wednesday, May 29, and Thursday, May 30, for appointments in San Antonio. There is, however, conflicting testimony regarding the content of their conversation.

Bauknight testified consistently that he was out of town for Memorial Day weekend and returned to the office on Tuesday, May 28. In his office, he found Salazar's request to be off work on May 29 and May 30 and documentation of Salazar's appointments. Bauknight testified that he asked Salazar if the appointments were for the research program, and Salazar confirmed that they were. Bauknight told Salazar that he was not authorized to leave work to participate in the research program. According to Bauknight, Salazar was "agitated" and "mad about it," but said "okay" and gave no indication that he intended to keep the appointments.

Salazar provided several different versions of his May 28 conversation with Bauknight. At the July 24, 2013 unemployment hearing before the Texas Workforce Commission, Salazar first testified that on May 28, when Bauknight asked him if the appointments on May 29 and May 30 were part of the research program, he "did not respond" because he was "upset" and thought the paperwork was "self-explanatory." Later, during the same hearing, Salazar testified that on May 28, Bauknight called him

3

into his office, asked if the appointments were for the research program, and Salazar answered "yes." When asked whether he told Bauknight that he had other medical appointments on May 29 and 30 unrelated to the research, Salazar stated he did not. Salazar testified that Bauknight told him he did not have permission to go to the appointments, but that he went anyway because he "needed to get that done."

At the workers' compensation hearing on March 18, 2014 before the Division of Workers' Compensation, Salazar testified that on Tuesday, May 28, 2013, he told Bauknight that he was going to San Antonio for the research program on May 29 and 30, and Bauknight told him not to go. Still later, at his deposition on May 28, 2014, Salazar testified that on May 28 Bauknight told him that if the appointments on May 29 and 30 were for the research program, he should not go and that he was not authorized to be absent from work to attend the appointments. When asked whether he told Bauknight anything about the nature of the appointments, whether they were for research or non-research purposes, Salazar stated that he did not.[2] Later, in the same deposition, Salazar stated that on May 28, he *did* tell Bauknight that the appointments on May 29 and 30 involved both the research program and non-research-related medical appointments. Salazar acknowledged that when Bauknight told him he did not have permission to go to VA appointments for the research program, he recognized that "[t]hey were warnings, but [he] never thought it was going to affect [his] job."

It is undisputed that Salazar did not report for work or contact CMI on May 29 and May 30, 2013. When Salazar reported for work on Friday, May 31, Bauknight told him to go home and report to work on Monday, June 3. The parties agree that on June 3, 2013,

_____

[2] Salazar had three appointments on May 29, including one for participation in the research program. He had one non-research-related appointment on May 30.

4

Salazar reported to Bauknight's office and was given a termination report, which stated:

> Was told not to leave work to attend voluntary VA Clinic Research program appointment on May 29 & 30 because as Mr. Salazar stated, it was not a medically necessary doctor's appoint[ment]. It was a voluntary, paid research program he had enrolled in at an earlier date. Two days of no call, no show.

When asked at the unemployment hearing whether Bauknight told him why he was fired, Salazar stated, "[y]es, sir, because I made the appointments to San Antonio at the VA hospital in San Antonio for that appointment, and [he] told me not to make it[.]" Salazar said that Bauknight "didn't talk much." Salazar said that he declined to sign the report. Salazar did not challenge the reason for his termination or attempt to explain the circumstances of his absences on May 29 and 30. Bauknight said that Salazar gave "no indication prior to the appointments or after the appointments that any of those appointments were anything other than research."

Salazar sued CMI, alleging wrongful termination in retaliation for his filing of a workers' compensation claim. *See* TEX. LAB. CODE ANN. § 451.001. CMI filed a no-evidence and traditional motion for summary judgment. In the no-evidence section of the motion, CMI alleged that Salazar had no evidence of a causal connection between his filing of a workers' compensation claim and his termination—in other words, evidence that but for Salazar's filing a workers' compensation claim, his termination would not have occurred when it did. *See Benners v. Blanks Color Imaging, Inc.*, 133 S.W.3d 364, 369 (Tex. App.—Dallas 2004, no pet.) ("The employee has the burden of demonstrating a causal link between the discharge or discrimination and the filing of a workers' compensation claim.") (citing *Garcia v. Allen*, 28 S.W.3d 587, 600 (Tex. App.—Corpus Christi 2000, pet. denied)). CMI argued that Salazar was terminated based on the uniform

5

enforcement of CMI's absence-control policy, and there is no evidence that CMI did not apply it uniformly. In the traditional section of its motion for summary judgment, CMI argued that Salazar has failed to raise a genuine issue of material fact as to whether CMI terminated him because he filed a workers' compensation claim. CMI attached evidence to its motion, including, in relevant part, excerpts from the July 24, 2013 unemployment compensation hearing, excerpts from the March 18, 2014 workers' compensation hearing, and excerpts from Salazar's and Bauknight's deposition testimony.

Salazar filed a response to CMI's motion, in which he argued that he had established a prima facie case of retaliation by demonstrating a causal link between his filing of a workers' compensation claim and his termination. Specifically, Salazar argued that he presented circumstantial evidence sufficient to establish a causal link between the filing of his compensation claim and his termination by showing evidence of the factors identified in *Continental Coffee Products, Co. v. Cazarez*: (1) knowledge of the compensation claim by those making the decision on termination; (2) expression of a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for the discharge was false. 937 S.W.2d 444, 451 (Tex. 1996). Salazar also argued that the temporal proximity between the filing of his claim and his termination was evidence of a retaliatory motive. *See Parker v. Valerus Compression Servs., L.P.*, 365 S.W.3d 61, 67 (Tex. App.—Houston [1st Dist. 2011], pet. denied). Salazar noted that it is undisputed that Bauknight knew of his injury and knew that Salazar had hired a workers' compensation attorney to represent him. Salazar cited his own deposition testimony that after he filed his workers'

6

compensation claims, Bauknight became very critical of his work performance and asked him several times why he had retained a lawyer. Salazar argued that CMI violated its own absence control policy by terminating him for "two days of no call, no show" when he had provided notice that he would be absent. He also argued that he was not treated similarly to a co-worker, Dennis Smith, who was permitted thirty-five unexcused absences due to alcohol abuse before he was terminated. As to the fifth *Cazarez* factor—evidence that CMI's stated reason for the termination was false—Salazar argued that CMI's stated reason for the termination was "two days of no call, no show," but that his May 29 and 30 absences did not fit that definition because he had given notice and CMI knew where he was. Finally, Salazar notes that it is undisputed that his termination occurred in close proximity to his second work-related injury. Salazar's summary judgment evidence included excerpts from his own deposition and from Bauknight's deposition, CMI's attendance policy, the notices of his May 29 and 30, 2013 appointments, and attendance notes from former CMI employee Dennis Smith's personnel file.

CMI filed a reply to Salazar's response, in which it disputed Salazar's arguments. Following a hearing on June 30, 2014, the trial court granted CMI's motion for summary judgment without stating the ground for its ruling. This appeal followed.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

We review summary judgments de novo. *Neely v. Wilson*, 418 S.W.3d 52, 59 (Tex. 2013); *Nalle Plastics Family L.P. v. Porter, Rogers, Dahlman & Gordon, P.C.*, 406 S.W.3d 186, 199 (Tex. App.—Corpus Christi 2013, pet. denied). In doing so, we review the evidence "in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *City of Keller v. Wilson*, 168

7

S.W.3d 802, 824 (Tex. 2005). A motion for summary judgment may be brought on no-evidence or traditional grounds. *See* TEX. R. CIV. P. 166a(c), (i). The party moving for summary judgment bears the burden of proof. *Neely*, 418 S.W.3d at 59. Though the burden varies for traditional and no-evidence motions, all parties here brought forth summary judgment evidence; therefore, the differing burdens are immaterial and the ultimate issue is whether a fact issue exists. *See id.*; *Buck v. Palmer*, 381 S.W.3d 525, 527 n.2 (Tex. 2012). A fact issue exists if there is more than a scintilla of probative evidence. *Neely*, 418 S.W.3d at 59. Evidence is more than a scintilla if it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 228 (Tex. 2011). Evidence is less than a scintilla if it is "so weak as to do no more than create a mere surmise or suspicion that the fact exists." *Regal Fin. Co. v. Tex Star Motors, Inc.*, 355 S.W.3d 595, 603 (Tex. 2010). We will affirm a summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004).

Section 451.001 of the Texas Labor Code prohibits an employer from discharging or otherwise discriminating against an employee for filing a workers' compensation claim in good faith. TEX. LAB. CODE ANN. § 451.001(1). Salazar bears the initial burden of establishing a prima facie case of retaliatory discharge, which includes demonstrating a causal link between the discharge and the filing of his workers' compensation claim. *Benners*, 133 S.W.3d at 369. That is, Salazar must show that CMI's action "would not have occurred when it did had [Salazar's] protected conduct—filing a workers' compensation claim—not occurred." *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d

8

386, 388 (Tex. 2005) (per curiam); *Cazarez*, 937 S.W.2d at 450–51. Salazar may establish the required causal link by direct or circumstantial evidence. *Parker*, 365 S.W.3d at 67; *Benners*, 133 S.W.3d at 369. Once Salazar meets his burden, the burden shifts to CMI to rebut the alleged improper termination by offering proof that a legitimate, non-discriminatory reason for the termination exists. *Benners*, 133 S.W.3d at 369. If CMI presents summary-judgment evidence that the termination was for a legitimate, non-discriminatory reason, Salazar must, to survive the motion for summary judgment, rebut CMI's summary-judgment evidence. *Id.* He may do so either by producing controverting evidence raising a fact issue on whether the reason for termination was a pretext for discrimination or by challenging CMI's summary-judgment evidence as failing to prove as a matter of law that the reason given was a legitimate, non-discriminatory reason. *Id.* Summary judgment for CMI is proper if Salazar fails to produce controverting evidence. *Parker*, 365 S.W.3d at 68.

The Texas Supreme Court has held that the uniform enforcement of a reasonable absence-control policy does not constitute retaliatory discharge. *See Haggar*, 164 S.W.3d at 388; *Cazarez*, 937 S.W.2d at 450 (stating that an employer who terminates an employee pursuant to the uniform enforcement of a reasonable absence-control provision will not be liable for retaliatory discharge); *Tex. Div.–Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 313 (Tex. 1994). If an employee's discharge is required by the uniform enforcement of a reasonable absence-control policy, it cannot be shown that the employee's termination would not have occurred when it did but for the employee's assertion of a workers' compensation claim. *See Haggar*, 164 S.W.3d at 388; *Cazarez*, 937 S.W.2d at 450; *Carrozza*, 876 S.W.2d at 313. When an employer produces evidence that the

9

absence-control policy has been uniformly enforced, resulting in the employee's termination, then no violation of the anti-retaliation statute is shown. *See Fenley v. Mrs. Baird's Bakeries, Inc.*, 59 S.W.3d 314, 320 (Tex. App.—Texarkana 2001, pet. denied).

## III. DISCUSSION

In both the no-evidence and traditional sections of its motion for summary judgment, CMI challenges the causation element: whether Salazar's termination would not have occurred when it did if he had not filed a workers' compensation claim. CMI argued that it presented evidence of a legitimate reason for Salazar's termination—that he violated CMI's two-day no-call/no-show attendance policy. CMI's summary judgment evidence included excerpts from Bauknight's deposition testimony, excerpts from the March 18, 2014 workers' compensation hearing, Salazar's termination notice, and CMI's attendance policy. CMI's attendance policy states, in relevant part: "Unexcused absences cannot be tolerated. If the employee is absent without notice for two days in a row, they will be considered as having abandoned their job, and the Company will process their work separation as a voluntary resignation on their part." As noted above, Salazar's termination report stated that he "[w]as told not to leave work to attend voluntary VA Clinic Research program appointment on May 29 and 30 . . . . Two days of no call, no show."

At the March 18, 2014 workers' compensation hearing, Bauknight testified that in his conversation with Salazar on Tuesday, May 28, 2013, he asked Salazar if the May 29 and 30 appointments were for research, Salazar said "yes," and Bauknight told him he was not authorized to leave work to go to the research program. Bauknight stated that Salazar did not show up for work or call in on May 29 or 30. Bauknight described Salazar's termination on Monday, June 3, 2013:

10

June the 3rd was the Monday. I asked [Salazar] to return. I asked him to wait until Kim was there so that there would be a witness to the termination, because it is self-termination for the no-call, no-show. Repeated it again that it was for the two days he was not authorized to go to the research program. It's, you know, within his right that he did not sign the self-termination form, which is fine, and that was it. No mention of anything, but research program at that time.

Assuming, but not deciding, that Salazar met his burden to show a prima facie case, we conclude that CMI presented a legitimate non-discriminatory reason for Salazar's termination. We will next consider whether Salazar produced evidence to negate CMI's legitimate non-discriminatory reason. *See Parker*, 365 S.W.3d at 68.

When an employer provides proof that it terminated an employee pursuant to a uniformly applied leave-of-absence policy, a terminated employee must provide competent evidence that the employer treated him differently from similarly situated employees in order to survive a summary judgment motion. *See id.*; *Haggar*, 164 S.W.3d at 388–89.

In his response, Salazar argued that he "received discriminatory treatment as compared to similarly situated employees" because a former co-worker, Dennis D. Smith, was permitted more than thirty-five unexcused absences. As summary judgment evidence, Salazar attached "Employee Notes" for Dennis Smith showing numerous absences spread over a two-year period. We have examined Smith's documented absences. Although there are numerous absences beginning in July 2007, there are no two consecutive entries of "no call/no show" until June 8 and 9, 2009, at which point Smith, just like Salazar, was "self-terminated."[3] In his deposition testimony, Bauknight

---

[3] Salazar admits this fact in his reply brief, noting that other employees "were permitted numerous unexcused absences for unjustifiable reasons" but "were not terminated or disciplined until they had two consecutive no-call/no-show absences."

11

distinguished between excused absences, unexcused absences, and no-call/no-show absences. He stated that there was no set limit on the cumulative number of unexcused absences.

"'Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct.'" *Parker*, 365 S.W.3d at 69 (quoting *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005)). The burden was on Salazar to provide competent evidence that CMI treated him differently from similarly situated employees. *Id.* at 68. In his deposition testimony, Salazar admitted that he knew of no other CMI employee who was involved in a voluntary research program and knew of no other CMI employee (including Smith) who worked a second job. Salazar failed to identify any CMI employee who had not filed a workers' compensation claim but was permitted to be absent to participate in a voluntary research program. Therefore, Salazar has not presented any evidence of a similarly situated employee to rebut CMI's non-discriminatory reason for his termination. *See id.*

Finally, we note that the parties disagreed over whether this Court should consider Salazar's deposition testimony that on May 28, 2013, he *did* tell Bauknight that some of his appointments on May 29 and 30 were medical appointments and were not related to the research program. CMI argues that under the "sham affidavit doctrine," this Court must disregard this last version of Salazar's testimony because it contradicts, without explanation, his earlier testimony given in the unemployment hearing and in his deposition regarding the same event. CMI cites *Del Mar College Distict v. Vela* in support of its argument. 218 S.W.3d 856, 862 (Tex. App.—Corpus Christi 2007, no pet.). In response, Salazar argues that: (1) CMI failed to present its "sham affidavit" argument to the trial

court; (2) the holding in *Del Mar* supports Salazar's argument that his conflicting deposition testimony was properly considered by the trial court; and (3) his testimony that he told Bauknight that some of the appointments were for medical reasons created a fact issue. The record reflects that CMI presented its sham affidavit argument in its motion for summary judgment. There is no indication in the record, however, that the trial court excluded or failed to consider any of the summary judgment evidence. We conclude that we need not address this issue because, assuming without deciding that the trial court did not err in considering all of the summary judgment evidence, including Salazar's contradictory testimony, we find that the trial court did not err in granting CMI's motion for summary judgment.

## IV. CONCLUSION

We hold that Salazar did not raise a fact issue on whether he was discharged for making a workers' compensation claim. Therefore, the trial court properly granted CMI's motion for summary judgment. We affirm the trial court's judgment.

DORI CONTRERAS GARZA,
Justice

Delivered and filed the
11th day of June, 2015.

13